```
 1                           STATE OF MICHIGAN

 2              IN THE 44th CIRCUIT COURT (LIVINGSTON COUNTY)

 3  PEOPLE OF THE STATE OF MICHIGAN,

 4  v                                        Case Number: 18-025329-FH

 5  GARY THOMAS FISCHER,

 6          Defendant.
    _____/
 7

 8                              SENTENCING

 9         BEFORE THE HONORABLE SUZANNE GEDDIS, CIRCUIT JUDGE

10              Howell, Michigan - Thursday, April 4, 2019

11

12  APPEARANCES:

13  For the People:                 MR. MICHAEL TAYLOR, P49497
                                    Assistant Prosecuting Attorney
14                                  210 South Highlander Way
                                    Howell, MI 48843
15                                  (517) 546-1850

16
    For the Defendant:              MR. ROLLAND SIZEMORE, P52758
17                                  Attorney at Law
                                    207 N. Michigan Avenue
18                                  Suite 202
                                    Howell, MI 48843
19                                  (517) 548-2411

20

21

22          TRANSCRIBED BY:         KRISTI COX, CER5451
                                    Certified Electronic Recorder
23                                  (517) 540-7532

24

25

                                    1
```

TABLE OF CONTENTS

PAGE

WITNESSES:

NONE

EXHIBITS:

NONE

```
 1                    Howell, Michigan
 2                    Thursday, April 4, 2019- 10:58 a.m.
 3                    THE COURT:  File 18-025329-FH and I guess they're
 4      all 18-025329-FH.
 5                    MR. TAYLOR:  That's correct, your Honor.
 6                    THE COURT:  Your appearances, please?
 7                    MR. TAYLOR:  Michael Taylor for the People.
 8                    MR. SIZEMORE:  Rolland Sizemore appearing on behalf
 9      of and soon to be with Gary Fischer.
10                    THE COURT:  You're Gary Fischer?
11                    MR. FISCHER:  I am.
12                    THE COURT:  Okay.
13                    MR. TAYLOR:  Your Honor, this is the date and time
14      set for sentencing.  The parties have received copies of the
15      presentence report and reviewed the same.  I, I don't have
16      any additions, corrections, or deletions to the presentence
17      report.  I know there are some guideline challenges that
18      we'll want to resolve, but before we get to that I would that
19      the Court receive the victim impact statement.  The victim is
20      here today and would like to make a statement.
21                    THE COURT:  You want her to speak now?
22                    MR. TAYLOR:  Yes.
23                    THE COURT:  Okay.
24                    MR. TAYLOR:  Part of what she's going to say is
25      what I'm going to ask the Court to rely on in resolving some
```

3

```
 1        of the guidelines.
 2                  THE COURT:  All right.  Very good.  Hi.  Will you
 3        please state your name for the record?
 4                  MS. MINER:  Heather Miner.
 5                  THE COURT:  Okay.  Ms. Miner, what would you like
 6        to say?
 7                  MS. MINER:  I have a lot of things I wanted to say,
 8        but, um, I feel like Gary was found guilty on three of four
 9        charges.  The, the fourth one was not permitting me to
10        contact 911.  And I feel like I wanted to express to you that
11        I, my concern is I would have had to die in order for that
12        one to be found guilty.  He would have had to have never
13        released my phone in order for me to get free from him.
14                  I believe he intended to harm me greatly.  He did
15        over a thousand dollars, upwards of $2,000 of damage in my
16        home.  I had to have the door replaced, the walls redone,
17        ceiling fan replaced.  And that doesn't even touch the, the
18        visions I have to see at night, every night, and not feel
19        safe in my own home that I own.  So I just can't move.  I
20        feel it's important that Gary learns the understanding of
21        consequences.  And that's all I really have to say.
22                  THE COURT:  All right.  Thank you.
23                  MS. MINER:  Thank you.
24                  MR. TAYLOR:  Your Honor, with that, I do have a
25        number of guideline challenges.  As to offense variable one
```

4

```
 1        is currently scored at zero points.  If the Court recalls,
 2        the testimony at trial was that during the initial
 3        altercation that occurred in the victim's bedroom, the
 4        defendant had seized her phone.  And when she attempted to
 5        get it back from her (sic), he struck her in the head with
 6        it.  OV1 is appropriately scored at 10 points when during the
 7        sentencing offense the offender, the victim was touched by
 8        any other type of weapon and of course, that's exclusive of
 9        firearms or stabbing instruments.  Obviously, striking her in
10        the head with a phone was an instrument at that point that
11        caused harm to her by hitting her in the head with it.  And I
12        think that 10 points is appropriately scored there.
13                  THE COURT:  Any objection to that?
14                  MR. SIZEMORE:  No, your Honor.
15                  MR. TAYLOR:  I had several more if you want me to
16        go through all of them.
17                  THE COURT:  I know.  I'm just asking him about OV1.
18                  MR. SIZEMORE:  No, and if all of the --
19                  MR. TAYLOR:  The ones we talked about.
20                  MR. SIZEMORE:  -- objections that Mr. Taylor is
21        intending to bring up are what we talked about in the back, I
22        will --
23                  MR. TAYLOR:  Just, okay.
24                  MR. SIZEMORE:  -- certainly stipulate to --
25                  MR. TAYLOR:  So if I may then, I'll just put them
```

```
 1             all on the record and we'll do it --
 2                    THE COURT:  Yes, please.
 3                    MR. TAYLOR:  -- that way.  OV1 should be 10 points.
 4             OV7 should be zero points.  OV10 should be 10 points because
 5             of the domestic relationship between the victim and the
 6             defendant that we discussed, where they had had frequent
 7             intermittent encounters, which is how he came to have the
 8             garage code to let himself into her home to begin with.  OV12
 9             should be 10 points for two reasons.  As the Court heard
10             testimony at the trial, the defendant left and then broke
11             back in through another entrance and committed a second
12             assault.  That would be another crime against a person, home
13             invasion that occurred on that date, and the sentencing, or
14             the offense that the jury acquitted on by or beyond
15             reasonable doubt standard, the Court certainly has the
16             ability to determine by a preponderance of the evidence that
17             the offense actually did occur.  Two crimes against a person
18             occurring within 24 hours of the sentencing offense for which
19             the conviction will not enter is appropriately scored at 10
20             points for OV12.
21                    THE COURT:  All right.
22                    MR. TAYLOR:  Those are the only challenges I had.
23             That lowers the total OV points to 80 points and the
24             guideline range remains 99 to 320 months.
25                    THE COURT:  Mr. Sizemore?
```

1             MR. SIZEMORE:  Your Honor, I stipulate to all of
2    the, um, guidelines corrections that Mr. Taylor just put on
3    the record.
4             THE COURT:  Okay.
5             MR. TAYLOR:  Your Honor, with that, the Court sat
6    through the jury trial on this case.  You heard not only the
7    testimony, but the 911 call a number of times when we could
8    get it to play.  You saw the injury photos.  The victim's
9    tooth was knocked out.  This was, by no stretch of the
10   imagination, an insignificant event that happened in her
11   home.
12            As she indicated to you, she has long-term
13   psychological injury from this and that every night she has
14   to return to the scene of this crime.  She doesn't get to
15   move away.  She doesn't get to pretend that it didn't happen.
16   She goes down to lay in bed in the same bed that he crawled
17   into with her before he beat her.  She goes home and walks
18   through the same door that he let himself in through or
19   kicked in in order to get in every single day.
20            The guidelines in this case are 99 to 320 months.
21   You could give him any number within that range without
22   having to justify it.  It is presumptively reasonable to give
23   him a 320 month sentence for his crimes.  That being said,
24   the, the mid, the midpoint of the guidelines in this case is
25   419 months, half of that would be 210 months or about 17

1  years.  I, I indicated when we had a presentence conference
2  on this case, I thought midpoint of the guidelines would be
3  appropriate given that he was on Circuit Court probation at
4  the time, to this Court actually, at the time he committed
5  this offense.
6       He's got a prior ethnic intimidation offense
7  against him.  Certainly, there was nothing mitigating about
8  this circumstance that would have warranted him turning
9  around and putting his hands on the victim.  Even if the
10 Court were to give him the benefit of the doubt that he was
11 confused or didn't think it was going to be a big deal to let
12 himself into her house to begin with, when he decided to, to
13 stand and fight and attack her instead of leaving, and then
14 kick in her front door to reengage and beat her more, that is
15 not an impulse; not a momentary mistake.  This was an ongoing
16 transactional offense that was persistent and willful.
17       And then when confronted with a police officer
18 after he committed this offense, he didn't do the right thing
19 then either.  He chose to try to evade the police and had to
20 be tackled to the ground by a uniformed police officer.
21       So I certainly think that, that, that the midpoint
22 sentence would be appropriate in this case.  Certainly, I
23 know if the Court was inclined to go somewhat lower than
24 that, but I, I honestly did recommend that to the Court.
25       THE COURT:  All right, Mr. Sizemore?

1          MR. SIZEMORE:  Your Honor, Mr. Fischer does have an
2    extensive criminal history, but his criminal history is
3    largely theft related.  He has one prior pseudo assaultive
4    conviction on his record from long ago.  That's the ethnic
5    intimidation.  And there were several factors in that case,
6    which mitigate against his assaultive nature.  He is not an
7    assaultive man.  He is a substance abuser.
8          He was drunk by all accounts and highly intoxicated
9    at the time that he made the, the string of bad decisions.
10   Mr. Taylor called it, calls it a willful persistent offense
11   and I call it just a string of really, really horrible
12   decisions that he made while he was intoxicated.  Mr.
13   Fischer, I have represented before.  I have, frankly his,
14   part of his family and I go way back because I prosecuted a
15   case years and years ago where his, I believe it was his
16   cousin was the victim of a, she died in a car accident and I
17   prosecuted the case.  So I've known the family to some extent
18   for a long, long time.
19         I can tell you this.  Mr. Taylor has the support of
20   a very loving, very, very loving family. His mother, father,
21   brother, other family members are here.  His girlfriend is
22   here.  And they have had not only unwavering support of him,
23   they don't condone what he does, but they love him, and there
24   is a good side to him.  He needs to exorcise his demon and
25   that is his alcohol problem.  But I think that, you know,

9

1    I've always thought that you don't send people to prison to
2    get better.  You send people to prison because we don't know
3    what else to do with them.  We need to protect society from
4    them or the punishment is, or the actions were severe enough
5    that they need to go.
6         Mr. Taylor, or I'm sorry Mr. Fischer needs to go to
7    prison.  There's no two ways about it.  The jury spoke.  I
8    believe Ms. Miner testified appropriately in her victim
9    impact statement, very appropriately today, described what
10   she went through.  And because of the impact on her you have
11   to send him to prison.  You do.  I don't think there's any
12   way around it.  Justice demands that.  The guidelines
13   certainly support that.  But I think 15 years is too long.
14        I think that this Court can send the message, do
15   the job the Court needs to do to protect society, and send
16   the message to Mr. Fischer that he can't engage in any, any
17   of this kind of conduct - not only this kind of conduct, but
18   he can't, he can't drink, and he can't do stupid stuff
19   anymore.  And I think that message can certainly be sent with
20   a substantially lower sentence.  I'm going to ask the Court
21   to go to the bottom of the guidelines at 99 months and
22   sentence him there.  I think that's appropriate.  I think
23   that that satisfies the four conditions or requirements the
24   Court is required to look at when sentencing someone and I
25   ask the Court to do that.

10

1          MR. TAYLOR:  And not to tack on, but I did speak to
2     the victim.  I know that in the report, restitution is to be
3     imposed in an amount to be determined.  Speaking her, with
4     her today, her request based on the repair cost to the items
5     that were damaged in, in her apart-, or her house was $1,795.
6          MR. SIZEMORE: Well, I'm going to, I'm not going to
7     stipulate to that.  I'd ask to see invoices for that so that
8     we can --
9          MR. TAYLOR:  Well, what, I guess what I would ask
10    the Court to do then is reserve restitution within 30 days.
11    If the parties cannot stipulate to a restitution amount based
12    on the invoices I'll have to send to Mr. Sizemore, then we
13    might writ him here for a restitution hearing.
14          THE COURT:  Okay.
15          MR. SIZEMORE:  Thank you, your Honor.
16          THE COURT:  Mr. Fischer, what would you like to
17    say?
18          MR. FISCHER:  Well, I've been in jail now for seven
19    months.  Not one day has gone by that I haven't thought about
20    that night.  I did, in fact, make some terrible errors in
21    judgment.  I broke laws that night and I know that I need to
22    be punished for those.  However, not everything that was
23    stated during the course of my trial was accurate.  I regret
24    not taking that stand and defending myself by telling my side
25    of my story.  That's my biggest mistake during this whole

11

1  thing.  Heather, I'm sorry for my role in what took place
2  that night.  I'm accountable.  Everything spiraled out of
3  control quickly.  And everything went from fine to bad due to
4  my intoxication and my bad judgment.  But you know as well as
5  I know that I didn't break into your house when I got there
6  that night.  You could have got on that stand and told the
7  truth and I still would have been in trouble and I still
8  would have went to prison.  You didn't have to get up there
9  and lie and make things up, but I'm sorry.  I mean, it was my
10 actions that was the catalyst for that evening, yes.
11             I wanted to apologize to Sergeant Fogo who is not
12 here, but the man that he encountered at 1629 Welland Street
13 that night is not indicative of the man that I am.  I was
14 fueled by alcohol and adrenaline.  And I refused his initial
15 orders to surrender.  And I understand that's a crime and
16 there are consequences for that.  I accept that.  So now I'm
17 facing eight years to life in prison.  And that seems to me
18 to be borderline cruel and unusual.  During my incarceration,
19 I've studied similar convictions and the amount of time
20 handed down in this very county.  Convicted armed bank
21 robbers have received less sentences.  There are convicted
22 pedophiles and sexual predators in this very jail that prey
23 on the women and children in this community that have
24 received far less sentences.  I'm more dangerous that that?
25 Eight times more dangerous?  I just don't feel like 15 years

12

1     seems to fit the crime that was committed that night, or the
2     crimes.
3         The, the lower end of the guidelines is certainly
4     more than enough for me to have learned a lesson.  I've
5     already learned a lesson.  In summary, I take full
6     responsibility for my actions that night.  I'm ready to
7     accept my punishment.  I just want to begin to put all this
8     behind me and move forward with my life.  I just don't think
9     that that sentence is reasonable.
10        I'm going to use this time to reflect, get sober,
11    concentrate seriously on living a sober life from this point
12    forward.  And I'm going to turn a negative into a positive
13    with the support of my family, my fiancée, friends.  I don't
14    expect Heather to forget, but maybe one day she'll forgive.
15    And that's all I've got.  Thank you.  God bless.
16        THE COURT:  All right.  This was a jury trial.  A
17    jury convicted you of the charges of home invasion first
18    degree.  And you are habitual offender, fourth offender.  The
19    guidelines, when I look at your prior record of 31 prior
20    misdemeanors, you're not like --
21        MR. FISCHER:  I haven't had a driver's license –
22        THE COURT:  -- anybody else.
23        MR. FISCHER:  -- in 20 years.
24        THE COURT:  You're not like everybody else.  You
25    have three prior felonies.  This was a situation where you

13

1   threatened to kill Ms. Miner at one point.  I, you say on the
2   one hand that you were intoxicated and that was the reason.
3   On the other hand, you call Ms. Miner a liar for what she
4   said on the stand.  It can't be both ways.
5               MR. FISCHER:  It is both ways.
6               THE COURT:  Well it, when you were interviewed by
7   the probation department, you said that you drink to get
8   drunk.  And this was a very, very serious offense as to what
9   happened.  You knocked out her tooth.  She, um, she got hit
10  in the head.  I sat here and listened to all of the facts and
11  the prosecutor is asking for the middle of the guidelines, 17
12  years.  I have indicated and assessed that 15 to 50 years
13  would be appropriate.  I will give you credit for 198 days
14  served, but you are to go to the Michigan Department of
15  Corrections for a period of 15 years to 50.  You must pay
16  restitution.  I will reserve restitution.  If there is a
17  necessity for a hearing, we will schedule a hearing for the
18  restitution amount.  DNA testing, and pay a $60 fee as
19  ordered by the Court.  You must pay $68 state costs; pay
20  victim's assessment in the amount of $130; and pay court
21  costs in the amount of $550.67, and that is count one.
22              Count two - one year in Livingston County jail with
23  credit for 198 days served; $68 state costs.
24              Count four - you are sentenced, you are sentenced
25  to one year in Livingston County Jail with credit for 198

14

1    days served.  You must pay $50 state costs.

2            As I indicated, restitution is reserved.  If you
3    wish to have a hearing, we will schedule the matter for a
4    hearing.

5            If you are dissatisfied with this conviction or
6    sentence, you have the right to appeal.  If you wish to do
7    so, you must do so within 42 days.  If you don't have the
8    money to hire a lawyer, one will be appointed for you at
9    county expense to do so and a form has been handed to you to
10   indicate your appellate rights.  Okay?

11           MR. SIZEMORE:  Thank you, your Honor.  He has
12   executed the form.  It's returned to the Court.  He has a
13   copy for filing if he wishes to file an appeal.

14           THE COURT:  Thank you.

15           MR. TAYLOR:  Thank you, your Honor.

16           (At 11:18 a.m., proceedings concluded)

17                          **********

15

```
 1  STATE OF MICHIGAN        )
                             )
 2  COUNTY OF LIVINGSTON     )

 3       I certify that this transcript, consisting of 16 pages, is a

 4  complete, true, and correct transcript, of the proceedings and

 5  testimony taken in this case on April 4, 2019.

 6

 7                                   _____
                                     Kristi Cox, CER5451
 8                                   Certified Electronic Recorder
                                     204 South Highlander Way
 9                                   Howell, MI  48843
                                     (517) 540-7532
10
    Dated:  July 14, 2019.
11
```

16