Approved, Michigan Court of Appeals

| LOWER COURT<br><br>Livingston County Circuit Court | Electronically Filed<br><br>BRIEF COVER PAGE | CASE NO.<br>Lower Court   18-25329 FH<br><br>Court of Appeals  348539 |
|---|---|---|

(Short title of case)
Case Name: **People v. Gary Thomas Fischer**

1. Brief Type (select one):
   ☒ APPELLANT(S)   ☐ APPELLEE(S)   ☐ REPLY
   ☐ CROSS-APPELLANT(S)   ☐ CROSS-APPELLEE(S)   ☐ AMICUS
   ☒ OTHER [identify]:   Brief on Appeal

2. This brief is filed by or on behalf of [insert party name(s)]: **Gary Thomas Fischer**

3. ☐   This brief is in response to a brief filed on        by      .

4. ORAL ARGUMENT:   ☒ REQUESTED        ☐ NOT REQUESTED

5. ☐ THE APPEAL INVOLVES A RULING THAT A PROVISION OF THE CONSTITUTION, A STATUTE, RULE OR REGULATION, OR OTHER STATE GOVERNMENTAL ACTION IS INVALID.
   [See MCR 7.212(C)(12) to determine if this applies.]

6. As required by MCR 7.212(C), this brief contains, in the following order: [check applicable boxes to verify]
   ☒ Table of Contents [MCR 7.212(C)(2)]
   ☒ Index of Authorities [MCR 7.212(C)(3)]
   ☒ Jurisdictional Statement [MCR 7.212(C)(4)]
   ☒ Statement of Questions [MCR 7.212(C)(5)]
   ☒ Statement of Facts (with citation to the record) [MCR 7.212(C)(6)]
   ☒ Arguments (with applicable standard of review) [MCR 7.212(C)(7)]
   ☒ Relief Requested [MCR 7.212(C)(9)]
   ☒ Signature [MCR 7.212(C)(9)]

7. This brief is signed by [type name]:   **Katherine Marcuz**
   Signing Attorney's Bar No. [if any]: **(P76625)**

**STATE OF MICHIGAN**

**IN THE COURT OF APPEALS**

**PEOPLE OF THE STATE OF MICHIGAN**

                        Plaintiff-Appellee,

-vs-

**GARY THOMAS FISCHER**
                    Defendant-Appellant
_____/

**LIVINGSTON COUNTY PROSECUTOR**
Attorney for Plaintiff-Appellee
_____

**KATHERINE L. MARCUZ (P76625)**
Attorney for Defendant-Appellant
_____

**Court of Appeals No.** 348539

**Lower Court No.** 18-25329 FH

**DEFENDANT-APPELLANT'S BRIEF ON APPEAL**
**(ORAL ARGUMENT REQUESTED)**

**STATE APPELLATE DEFENDER OFFICE**

BY:    **KATHERINE L. MARCUZ (P76625)**
          **Assistant Defender**
          3300 Penobscot Building
          645 Griswold
          Detroit, Michigan  48226
          (313) 256-9833

## TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................................................... i

STATEMENT OF QUESTIONS PRESENTED.......................................................... iii

STATEMENT OF JURISDICTION........................................................................... iv

STATEMENT OF FACTS ..........................................................................................1

ARGUMENT ...............................................................................................................6

I.   Where the prosecution offered separate and distinct acts to support a guilty verdict for home invasion first degree, the trial court violated Mr. Fischer's constitutionally guaranteed right to a unanimous verdict by failing to give a special unanimity instruction. Additionally, Mr. Fischer was deprived of his constitutional right to effective assistance of counsel by trial counsel's failure to object to the prosecutor's argument and failure to request a specific jury instruction on unanimity. ........................................................................................................6

    A.  The trial court violated Mr. Fischer's constitutionally guaranteed right to a unanimous verdict by failing to give a special unanimity instruction. ...................9

    B.  Trial counsel's failure to object to the prosecutor's remarks during closing argument and his failure to request a unanimity instruction fell below an objective standard of reasonableness and prejudiced Mr. Fischer. ......................................15

II.  Mr. Fischer is entitled to resentencing under state and federal due process requirements where the prosecutor amended the habitual offender notice to increase Mr. Fischer's sentence enhancement from a habitual second to a habitual fourth outside the 21-day period provided by MCL 769.13. Trial counsel was ineffective for failing to object to the untimely amendment. .......................................................................................................18

III. Mr. Fischer is entitled to resentencing under state and federal due process requirements where errors in scoring the prior record and offense variables resulted in a higher guidelines range. Further, trial counsel was ineffective for failing to object to the erroneous scoring at sentencing. .................................................................................................................22

    A. PRV 5..............................................................................................................23

    B. OV 10.............................................................................................................26

    C. OV 12.............................................................................................................28

    D. OV 19.............................................................................................................30

    E. Need for Resentencing ...................................................................................31

    F. Ineffective Assistance of Counsel..................................................................32

SUMMARY AND RELIEF AND REQUEST FOR ORAL ARGUMENT.................33

# INDEX OF AUTHORITIES

## Cases

*People v Beck*, ___ Mich ____; ___ NW2d ___ (2019) ............................................................ 28

*Glover v United States*, 531 US 198 (2001) ............................................................ 21, 32

*People v Alexander, (After Remand)*, 207 Mich App 227 (1994) ............................ 24, 25

*People v Cain*, 498 Mich 108 (2015) ............................................................................ 9

*People v Carines*, 460 Mich 750 (1999) ................................................................... 6, 9

*People v Carter*, 503 Mich 221 (2019) ................................................................. 12, 29

*People v Cooks*, 446 Mich 503 (1994) ................................................. 7, 10, 11, 12

*People v Davis*, 250 Mich App 357 (2002) .................................................................. 6

*People v Ellis*, 224 Mich App 752 (1997) ............................................................. 19, 20

*People v Francisco,* 474 Mich 82 (2006) .......................................................... 20, 21, 32

*People v Hardy*, 494 Mich 430 (2013) ....................................................................... 22

*People v Harmon,* 248 Mich App 522 (2001) ....................................................... 21, 32

*People v Hershey*, 303 Mich App 330 (2013) ........................................................... 22

*People v Hornsby*, 251 Mich App 462 (2002) ........................................................... 19

*People v Houstina*, 216 Mich App 70 (1996) .............................................................. 6

*People v Jamison*, 292 Mich App 440 (2011) ....................................................... 27, 28

*People v Johnson*, 495 Mich 919 (2013) ................................................................... 19

*People v Kimble*, 470 Mich 305 (2004) ....................................................... 18, 23, 32

*People v Moldenhauer*, 210 Mich App 158 (1995) ...................................................... 6

*People v Moore*, 391 Mich 426 (1974) ............................................................ 24, 25, 26

*People v Quinn*, 219 Mich App 571 (1996) ............................................................... 7, 8

*People v Reichenbach*, 459 Mich 109 (1998) ..................................................... 24, 26

*People v Shipley*, 256 Mich App 367 (2003) ........................................................... 12

*People v Siterlet*, 299 Mich App 180 (2012), *aff'd in part, vacated in part*, 495 Mich 919 (2013)
........................................................................................................................... 20

*People v Trakhtenberg*, 493 Mich 38 (2012) .............................................................. 6

*People v Ullah,* 216 Mich App 669 (1996) ............................................................... 21

*People v Vaughn*, 491 Mich 642 (2012) ...................................................................... 6

*People v Wilder*, 485 Mich 35 (2010) .................................................................................... 8

*People v Yarger*, 193 Mich App 532 (1992) ................................................................ 7, 15, 16

*Strickland v Washington*, 466 US 668 (1984) ......................................... 6, 16, 21, 32

*Townsend v Burke*, 334 US 736 (1948) .................................................................. 20, 32

## Constitutions, Statutes, Court Rules

Const 1963, Art 1, § 17 .................................................................................................. 32

Const 1963, art 1, §§ 14, 20 ........................................................................................... 7

MCL 750.110 ................................................................................................................ 14

MCL 750.110a(2) ........................................................................................................... 8

MCL 769.13 ............................................................................................................ 18, 19

MCL 769.34(10) .................................................................................................. 22, 23, 32

MCL 777.40(1)(b) .......................................................................................................... 27

MCL 777.42(2)(a) .......................................................................................................... 28

MCL 777.49(b) .............................................................................................................. 30

MCL 777.55(1)(b) .......................................................................................................... 23

MCL 777.55(1)(d) .................................................................................................... 24, 26

MCL 777.55(2)(a) .......................................................................................................... 24

MCL 777.63 ............................................................................................................ 20, 31

US Const, Am VI ............................................................................................................ 6

MCR 6.410(B) ................................................................................................................ 7

## STATEMENT OF QUESTIONS PRESENTED

I.     Where the prosecution offered separate and distinct acts to support a guilty verdict for home invasion first degree, did the trial court violate Mr. Fischer's constitutionally guaranteed right to a unanimous verdict by failing to give a special unanimity instruction? Additionally, was Mr. Fischer deprived of his constitutional right to effective assistance of counsel by trial counsel's failure to object to the prosecutor's argument and failure to request a specific jury instruction on unanimity?

Trial Court made no answer.

Gary Thomas Fischer answers, "Yes."

II.     Is Mr. Fischer entitled to resentencing under state and federal due process requirements where the prosecutor amended the habitual offender notice to increase Mr. Fischer's sentence enhancement from a habitual second to a habitual fourth outside the 21-day period provided by MCL 769.13? Was trial counsel ineffective for failing to object to the untimely amendment?

Trial Court made no answer.

Gary Thomas Fischer answers, "Yes."

III.    Is Mr. Fischer entitled to resentencing under state and federal due process requirements where errors in scoring the prior-record and offense variables resulted in a higher guidelines range? Further, was trial counsel ineffective for failing to object to the erroneous scoring at sentencing?

Trial Court made no answer.

Gary Thomas Fischer answers, "Yes."

## <u>STATEMENT OF JURISDICTION</u>

Gary Thomas Fischer was convicted in the Livingston County Circuit Court by jury trial, and a Judgment of Sentence was entered on April 8, 2019. A Claim of Appeal was filed on April 17, 2019 by the trial court pursuant to the indigent defendant's request for the appointment of appellate counsel dated April 10, 2019, as authorized by MCR 6.425(F)(3). This Court has jurisdiction in this appeal as of right provided for by Mich Const 1963, art 1, §20, pursuant to MCL 600.308(1); MCL 770.3; MCR 7.203(A), MCR 7.204(A)(2).

## <u>STATEMENT OF FACTS</u>

**Overview**

Gary Fischer and Heather Miner were romantically involved. Over the summer of 2018, Heather gave Gary her garage door code so that he could let himself in when they spent time together at her home. On September 17, 2018, Gary and Heather got into an argument because he tried to retrieve her dog from her ex for her. Gary thought it was what Heather wanted—but Heather became upset. They argued over the phone, then Gary got drunk. A short time later, Gary went over to Heather's house and let himself in through the garage door. Heather asked Gary to leave, he refused, and she threatened to call the police. When Gary tried to take the phone from her, she punched him in the face and pushed him into her linen closet. A physical fight ensued with both parties landing blows. At some point, Heather and Gary exited the home, and then returned inside. Heather ultimately called 911, and Gary was arrested.

Gary was charged with first-degree home invasion, interfering with a crime report, resisting arrest, and aggravated assault. See Information, Lower Court Record. His trial took place over two days in March of 2019, before the Honorable Suzanne Geddis in the Livingston County Circuit Court.

Defense counsel waived his opening statement and rested without presenting any evidence. T2, 53. And though Mr. Fischer was only charged with one count of home invasion, the trial prosecutor presented evidence of two alleged unlawful entries and two alleged assaults. No special unanimity instruction was requested or given.

At sentencing, counsel did not object to an untimely habitual offender enhancement nor did he object to incorrect prior record and offense variables resulting in an inaccurate and inflated guidelines range.

**Pertinent trial evidence**

Gary Fischer and Heather Miner met through an online dating service in 2015. T1, 90, 168.[1] While Heather denied being in a "relationship" with Gary, she acknowledged that they had been sexually involved on and off for roughly three years and said "I love you" to each other. T1, 90, 166, 167. Beginning in 2016, Heather did not speak to Gary for a time because she got back together with an ex-boyfriend, Shawn Cotton. When Shawn and Heather broke up in June of 2018, Heather and Gary reunited. T1, 92-93. After the break-up with Shawn, Gary fixed Heather's garage door and changed the code for her. T1, 168. He also changed the locks of her house for her. T1, 168. Heather gave Gary the garage code to use to enter the house when she invited him over. T1, 94. She would also leave the door leading from the garage to the house unlocked for him. T1, 94.

About three months after Heather started seeing Gary again, she told him that Shawn and his sons "kidnapped" her dog, Maggie, from her condo. T1, 98-99, 110. Heather was heartbroken, and Gary agreed to help her try and get her dog back. T1, 99. On September 17, Gary called Heather to let her know that he had driven to Shawn's house and seen him with Maggie, but that he had not been able to get the dog back. T1, 100-101. On that day, Heather had smoked marijuana. T1, 172. Heather became upset at Gary because she was nervous that Shawn was going to call the police on them and thought they had agreed not to go there anymore. T1, 100-102. Gary expressed surprise and told Heather that he thought getting Maggie back was what she wanted. T1, 103. According to Heather, after exchanging several more texts back and forth, she told Gary she was "blocking" him. T1, 103. She then went to sleep between 9:00-

---

[1] The trial transcripts are abbreviated as follows: 3/4/19 Trial Tr. ("T1"); 3/5/19 Trial Tr. ("T2"); Sentencing 4/4/19 ("S").

10:30pm that evening. T1, 104-105. The door between the garage and the home was left unlocked. T1, 96-97.

Heather testified that she woke up sometime later to find Gary getting into bed next to her, and he was intoxicated. T1, 111-112. Heather stated that she immediately told Gary to leave, and, when he refused, used her feet to push him towards the edge of the bed. T1, 112-113. Gary got out of the bed and Heather began walking him towards the bedroom door while putting his shoes and belongings in his hands. T1, 114. While this was happening, Heather chastised Gary for drinking and driving and he faulted her for trying to make him drive intoxicated again. T1, 114-115. According to Heather, when they got to the bedroom door, Gary said that he was not going to leave and that she could not make him. T1, 115-116. Heather said that if she could not, then the cops could, and then reached for her phone. T1, 116.

As per Heather, when she reached for her phone, Gary grabbed her arm, twisted it, and took the phone from her. T1, 116. Heather responded by punching Gary with a closed fist and shoving him until they both ran into the linen closet. T1, 117-118. Then, according to Heather, Gary then hit her in the head with the cellphone. T1, 118. Heather screamed at Gary, and they began fighting. T1, 119. Heather admits there are parts of the fight she does not remember. T1, 120. However, she said at some point, they ended up on the floor near her dining room, and she alleged that Gary hit her head into the floor three times. T1, 120-121. After this, they got back up, and Heather tried to slam him into the cabinets, upon which he pushed her back into the table. T1, 123. Ultimately, Heather and Gary ended up back on the floor and Heather grabbed and squeezed Gary's genitals before biting him in the face. T1, 125. Gary let go of the phone, and when he got up to retrieve it, Heather ran downstairs and out through the garage. T1, 126, 128-129.

A short time later, Heather decided to go back into the house. T1, 130. As she walked back inside, Gary was standing in the doorway connecting the house and garage. He told her he would give her phone back if she agreed not to call the police. T1, 131. Heather grabbed the phone out of Gary's hand, ran inside, and locked the door. T1, 131-132. She then grabbed a kitchen knife, went into the bathroom, and called 911.[2] T1, 133.

Sometime later, Heather heard a noise downstairs, then saw Gary in the house. T1, 135. She did not know how he got back in and was still on the phone with 911 at this time. T1, 135. According to Heather, the two started wrestling while she held the knife in one hand and her cellphone in the other. T1, 137. She then claimed that Gary chased her around the house but stopped when he saw police lights outside. T1, 137-138. Eventually, after throwing some furniture which hit the walls and the light fixture, Gary left the house. T1, 140.

Officer Fogo responded to the 911 call. When he saw Gary walking away from the house, he commanded him to put up his hands. Gary began running, ran into a trash can, fell, and was tackled. T1, 213-215. Officer Fogo testified that Gary seemed intoxicated but was mostly "cooperative and cordial" after he allowed himself to be handcuffed. T1, 217, 225.

While Officer Fogo was with Gary, a second officer, Officer Vallance, entered the house. T2, 7. Officer Vallance encountered Heather with a knife in one hand, and the phone in the other. T2, 7. Heather told Officer Vallance she had been attacked by Gary. T2, 8-9. Officer Vallance noted that Heather had some bruising on her chest and arm, blood on her face, and a broken tooth. T2, 8, 12-13; P x 14-21. Heather also complained of bumps on her head, but Officer Vallance did not photograph or inspect her. T2, 13.[3]

---

[2] The call was entered into evidence as People's Exhibit ("P x") 22. T1, 143.

[3] The injuries to Gary's face were also documented. T1, 158.

4

After talking to Heather, Officer Vallance looked at the front door. T2, 17. She noted that the trim had been broken off and it was no longer on the hinges. T2, 17. She did not recall any shoe marks or pry marks and had no opinion on how it got open. T2, 17.

The police seized Heather's cell phone but did not obtain her phone records or review the calls and text messages between Heather and Gary. T2, 30.

Gary was found guilty of Count 1, home invasion first degree, Count III, resisting and obstructing a police officer, and Count IV, aggravated assault. T2, 121. He was found not guilty of Count 2, interfering with a crime report. T2, 121.

On April 4, 2019, Gary was sentenced as a fourth habitual offender. Though he was initially charged as a second habitual offender, the prosecutor amended the Information to increase the habitual enhancement from second to fourth, well after the 21-day statutory period. Felony Information and Amended Information, Lower Court Record. Defense counsel did not object.

At sentencing, the prosecutor made several challenges to the offense variables ("OV"s). S, 2-6. He asked that OV 1 be scored at 10 because the phone was a weapon, OV 7 be scored at zero, OV 10 be scored at 10 due to a domestic relationship, and OV 12 be scored at 10 because there had been two break-ins, and the court could find that the charge of interfering with a crime report had happened despite the acquittal. *Id.* S, 4-6. Defense counsel made no objections on the record. S, 7. The sentencing guidelines were calculated at 99 to 320 months. S, 6.

Judge Geddis sentenced Gary to 15 years to 50 in prison. S, 14.

## ARGUMENT

I.    **Where the prosecution offered separate and distinct acts to support a guilty verdict for home invasion first degree, the trial court violated Mr. Fischer's constitutionally guaranteed right to a unanimous verdict by failing to give a special unanimity instruction. Additionally, Mr. Fischer was deprived of his constitutional right to effective assistance of counsel by trial counsel's failure to object to the prosecutor's argument and failure to request a specific jury instruction on unanimity.**

*Issue Preservation and Standard of Review*

Questions of the sufficiency of jury instructions are reviewed de novo. *People v Moldenhauer*, 210 Mich App 158 (1995); *People v Houstina*, 216 Mich App 70 (1996).

Defense counsel did not request a special unanimity instruction. Unpreserved constitutional issues are reviewed for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 764 (1999).

A claim of ineffective assistance of counsel presents "a mixed question of law and fact," with questions of law reviewed de novo and the trial court's findings of fact reviewed for clear error. *People v Trakhtenberg*, 493 Mich 38, 47 (2012). When the issue of ineffective assistance of counsel is not preserved review is limited to the record. *People v Davis*, 250 Mich App 357, 368 (2002).

The Sixth Amendment of the U.S. Constitution guarantees Mr. Fischer "the assistance of counsel for his defense." US Const, Am VI. And the right to counsel is recognized as the right to effective assistance of counsel. *Strickland v Washington*, 466 US 668, 685-686 (1984). In order to prevail on an ineffective-assistance-of-counsel claim, Mr. Fischer must show that (1) counsel's performance "fell below an objective standard of reasonableness" and (2) but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669 (2012).

*Discussion*

The Michigan Constitution entitles the accused to a unanimous jury verdict. To protect that right, the trial court must instruct the jury properly on the unanimity requirement. Const 1963, art 1, §§ 14, 20; MCR 6.410(B); *People v Cooks*, 446 Mich 503 (1994). Typically, the general instruction regarding jury unanimity is sufficient to protect the defendant's right. But a specific unanimity instruction, which explains that there must be unanimity as to which one of a number of acts was proven beyond a reasonable doubt, is required in some circumstances. *Cooks*, 446 Mich at 518-519.

A specific unanimity instruction must be given where "1) the alternative acts presented as evidence are conceptually distinct or there are distinct proofs regarding each alternative, or 2) other factors are present that create a genuine possibility of juror confusion or disagreement." *Id.*

In *People v Yarger*, 193 Mich App 532 (1992), this Court held that reversible error occurred when "the jury was not instructed that it must unanimously agree on which acts were proven beyond a reasonable doubt." There, the defendant was charged with a single count of criminal sexual conduct and was convicted on the basis of testimony alleging multiple acts. The Court observed, "a possibility exists that, for example, six jurors were convinced that fellatio had occurred, but not intercourse, while the other six jurors held the opposite view." *Id.*

And in *People v Quinn*, 219 Mich App 571, 576 (1996), this Court held that two conceptually distinct offenses had been improperly charged in a single count of receiving and concealing stolen property. In that case the defendant had attempted to sell a set of blueprints and a set of "setup sheets" for the manufacture of a machine. The defendant had attempted to sell the materials at the same time but had illegally obtained possession of each document at different times. The *Quinn* Court held that the defendant had been deprived of his right to a unanimous

jury verdict because it was possible that some jurors had voted to convict based upon the blueprints and others based upon the "setup sheets." *Id*. at 576-577.

More recently, in *People v Jordan*, this Court found that a special unanimity instruction was appropriate where the defendant was charged with a single count of first-degree home invasion and the three underlying crimes (assault, larceny, and criminal sexual conduct) presented to establish the second element of the charge were based on different acts with different proofs. *People v Jordan*, unpublished per curiam opinion of the Court of Appeals, issued May 25, 2006 (Docket No 259436), attached as Appendix A.[4]

The instant case squarely implicates both prongs of the *Cooks* test. Here, the prosecutor charged Mr. Fischer with one count of home invasion first degree, yet presented evidence of separate and distinct acts to satisfy the offense, particularly with respect to the first element of the offense—breaking or entering a home without permission.[5] T1, 78. First, the prosecutor presented evidence that Mr. Fischer entered Ms. Miner's home without permission using the garage door code, an assault occurred, and Ms. Miner was lawfully present. T1, 79. Second, the

---

[4] In *Jordan*, this Court determined that any error in failing to give a special unanimity instruction did not require reversal because of the jury's verdict on separate offenses. Appendix A. As Mr. Jordan was unanimously convicted of two of the underlying crimes, this Court could "clearly deduce from the jury's verdicts" that they unanimously agreed on the basis for the home invasion conviction. *Id.* at 3.

[5] To establish first-degree home invasion, the prosecution must prove beyond a reasonable doubt:

> (1) that the defendant either broke and entered a dwelling or entered a dwelling without permission,

> (2) that defendant either intended when entering to commit a felony, larceny, or assault in the dwelling or at any time while entering, present in, or exiting the dwelling committed a felony, larceny, or assault; and

> (3) while the defendant was entering, present in, or exiting the dwelling either the defendant was armed with a dangerous weapon or another person was lawfully present in the dwelling.

MCL 750.110a(2); *People v Wilder*, 485 Mich 35, 43 (2010).

8

prosecutor presented evidence that Mr. Fischer broke into Ms. Miner's home through the front door later that same night and engaged in further assaultive behavior. T1, 80. Though the totality of the lower court record reflects that the home invasion charge was premised on the first entry, neither the charging documents nor the prosecution's presentation of the case at trial specified which acts could be considered in deciding whether the elements of first-degree home invasion were met. Indeed, in closing argument the prosecutor conflated the two entries and subsequent alleged assaults when addressing the elements of home invasion, going so far as to say "So, really, [Gary] kind of committed two home invasions that night" T2, 64.

Trial counsel did not object or request a specific unanimity instruction and the trial court instructed the jury only that its verdict must be unanimous, in accordance with CJ2s 3.11(3). T2, 108. It did not instruct the jury that it had to unanimously agree as to which act or acts constituted the charged offenses.

### A. The trial court violated Mr. Fischer's constitutionally guaranteed right to a unanimous verdict by failing to give a special unanimity instruction.

Here, the two acts were materially distinct *and* there was reason to believe that jurors might be confused or disagree about the factual basis of Mr. Fischer's guilt. Therefore, the trial court was required to issue a specific jury instruction on unanimity to protect Mr. Fischer's constitutional right to a unanimous verdict. The trial court's failure to do was a clear legal error that deprived Mr. Fischer of his constitutional right to a unanimous verdict and thus both seriously affected his substantial rights and the fairness, integrity or public reputation of [the] judicial proceedings. *People v Cain*, 498 Mich 108, 116 (2015) citing *Carines*, 460 Mich at 763 (internal quotations omitted).

1.  <u>The alternate acts presented as evidence were conceptually distinct and there were different proofs regarding each alternative.</u>

The critical inquiry for determining whether alternate acts are "materially distinct" is whether either party presented evidence that materially distinguished them. *Cooks*, 446 Mich at 513. In *Cooks*, the defendant was charged with one count of criminal sexual conduct, but testimony on three sexual penetrations was elicited at trial. *Id.* at 505. The Court found that the defendant's multiple acts were not materially distinct in that case because they were substantially similar in kind and were based on identical evidence—the testimony of the complaining witness. The defendant did not present a separate defense for the multiple acts, and the only question for the jury was the credibility of the complaining witness.

This case is different. The underlying acts alleged to satisfy the first element of first-degree home invasion were not substantially similar in kind, they were supported by different proofs and the defense presented materially distinct defense theories. First, the prosecution's argument that Mr. Fischer entered Ms. Miner's dwelling without permission when he used her garage code was based entirely on Ms. Miner's testimony. T1, 110-112. Ms. Miner said she woke up to find Mr. Fischer climbing into bed with her and testified that he did not have permission to be in her home at that time. *Id.* From this evidence, the prosecutor argued that Mr. Fischer entered without permission and the first element of home invasion was satisfied. T2, 62-63.

Defense counsel maintained that this entry was with permission, T2, 74-75, and elicited information from Ms. Miner to rebut the prosecution's assertion otherwise. Upon cross-examination, Ms. Miner admitted to being romantically involved with Mr. Fischer at the time. T1, 166. She acknowledged that she had given Mr. Fischer her garage code and had let him use it to enter the home in lieu of a key. T1, 169. Further, that night the interior garage door was left

unlocked, which was consistent with how Ms. Miner would leave that door to allow Mr. Fischer

access. *Id.* Based on this evidence, a juror could have reasonably found that Mr. Fischer had

implicit permission to enter the home using the garage code as he had in the past. T1, 186.

The prosecution also presented evidence of a second unlawful entry premised on different

facts. After Ms. Miner and Mr. Fischer both exited the house and the first alleged home invasion

would have been complete, Ms. Miner testified that she ran back in to her home and locked the

doors on Mr. Fischer. T1, 187. According to Ms. Miner, Mr. Fischer broke back in to her house

by breaking the front door off its hinges. *Id.* At trial, the state presented photo evidence of the

door that showed it had been damaged by the time the police arrived at the scene. T1, 156;

People's Exhibits 9-11. The prosecution also played a 911 call that occurred after both of them

had re-entered the house, where Ms. Miner told Mr. Fischer to leave. T1, 143; People's Exhibit

22.

Defense counsel argued that Ms. Miner did not know how Mr. Fischer re-entered the

house and never said that it was through the front door, until Officer Vallance suggested it. T2,

81. He posited that the door could have been broken before the incident or afterward by a police

officer. T2, 82. Defense counsel further asserted that the prosecutor's exhibit does not actually

show that the door was off its hinges as alleged. T2, 82.

Furthermore, the acts at issue did not occur so closely in time that they constituted a

single entry into the home. See *Cooks*, 446 Mich 503, 532 n 4 (1994) (discussing the "continuing

conduct" exception). The *Cooks* Court stated that the "continuous conduct" exception should be

narrowly drawn, and applies only to:

> those offense[s] where the statute defining the crime may be interpreted as applying
> to an offense that may be continuous in nature, such as failure to provide,
> contributing to the delinquency of a minor, driving under the influence, concealing
> stolen property, and criminal acts of possession. Multiple sex acts do not merge into

a single continuing offense because the defendant can be convicted and punished for each separate act.

*Id.* at 532 n 4.

The crime of home invasion, unlike the examples listed above, is not an offense generally considered continuous in nature—the crime is completed by commission of the final element of the crime while the person is present in (or leaving) the dwelling. See *People v Shipley*, 256 Mich App 367, 377 (2003). Further, just as multiple sex acts cannot be a single continuous offense because a defendant can be convicted separately for each, the two alleged home invasions here cannot be continuous because the prosecutor alleged two distinct crimes. Not only did the prosecutor argue in closing that Mr. Fischer "kind of committed two home invasions that night," T2, 64, he argued at sentencing that Offense Variable ("OV") 12 (contemporaneous felonious criminal acts) be scored to reflect a second "home invasion." S, 6.[6] Specifically, the trial prosecutor asserted that "the defendant left and then broke back in through another entrance and committed a second assault. That would be another crime against a person, home invasion that occurred on that date . . ." S, 6.

In sum, because both home invasions relied on different proofs, were subject to different defenses, and were not a continuous course of conduct, they are materially different acts under the *Cooks* test.

---

[6] Where certain facts are used as a basis for the conviction of the offense at trial, it is improper to score them under OV 12 as well. *People v Carter*, 503 Mich 221, 227 (2019). As such, for the offense to be a contemporaneous felony under OV 12 in this case, it necessarily could not have been part of a continuous course of conduct.

2.  <u>Other factors are present that create a genuine possibility of juror confusion or
    disagreement.</u>

Even if this Court finds that the two alleged home invasions were not "materially distinct"

under the *Cooks* test, a unanimity instruction was still required because it is likely that the jurors

were confused or disagreed, especially given the way the prosecutor presented the evidence at

trial and argued it in closing. As discussed above, the prosecution presented both acts extensively

as evidence in favor of the first-degree home invasion charge and never clarified on which

alleged instance the charge was based. Instead, the prosecutor referenced and relied on facts from

both alleged home invasions from start to finish of the trial as evidence for one count in a way

that was likely to confuse the jury.

During his opening statement, the prosecutor said:

> The evidence is going to show you that Ms. Miner never told him he could come
> into her home when she was in bed. And that certainly, by shutting and locking
> the door after she got her phone back, she made it clear that the defendant was
> not permitted to come into her home, thus how he had to kick the door in to get
> back inside.

T1, 81-82.

And in closing argument, the prosecutor openly acknowledged the potential for

uncertainty in jurors' minds as to whether Mr. Fischer believed he had permission to enter Ms.

Miner's home through the garage. After discussing the first "break-in," the prosecutor turned the

jury's attention back to the second act, stating,

> He busted that door in to get back inside. So, if there was any question, any
> question in his mind of whether or not he was allowed to be in that house, I think
> her locking him out was probably a very clear signal, no, you are not allowed in
> here.

T2, 59.

The prosecutor's comments blending the evidence were some of the last things the jury

heard before going back to deliberate, and they increased the risk that some jurors based their

verdict on the first incident, and some based their verdict on the later incident. Given the evidence and the argument, is also possible that some jurors may have based their verdict on a combination of the two incidents.[7]

Moreover, the Felony Information that charged Mr. Fischer with first degree home invasion did not specify the underlying act, and so the jury had no further information from which they could have made their own conclusion about which act they were supposed to be unanimously agreeing on.[8] Felony Information and Amended Information, Lower Court Record.

The possibility of a split is particularly likely in this case because each alleged home invasion had stronger and weaker evidence for individual elements, and the prosecutor's presentation of all the evidence together allowed him to rely on the strongest elements of each. With respect to the first alleged home invasion, the prosecutor presented documentary and testimonial evidence that an assault occurred. In contrast, the evidence of an assault after the second alleged home invasion was weaker. Given Ms. Miner's testimony that she was on the phone with 911 when Mr. Fischer broke in through the front door and remained on the phone with 911 until the police arrived, a reasonable jury could have found that if a threat or fight occurred after Mr. Fischer reentered the home, it would have been captured on the 911. Yet, on the call, no threat or fight is audible. P x 22.[9]

---

[7] The chronological nature of first-degree home invasion requires that the unlawful entry occur before, or simultaneously with, the subsequent assault in the dwelling. MCL 750.110.

[8] The Information read: "That on or about September 18, 2018, in Howell, in Livingston County, the defendant did allegedly break and enter or did enter without permission a dwelling located at 1629 Weland Street and while present or exiting did commit an assault. While entering, present in, or exiting the dwelling, Heather Miner was lawfully present there in contrary to state law."

[9] The prosecution said of the time after the alleged break-in, "By the time you hear the 911 call, the fight is pretty much over." T2, 88.

Conversely, as discussed in more detail *supra*, the evidence offered to prove the first element of home invasion, unlawful entry, was weaker in the first scenario where Mr. Fischer entered with the garage code provided by Ms. Miner, as opposed to the second alleged home invasion where the prosecutor presented evidence of breaking and entering.

Mr. Fischer was constitutionally entitled to a unanimous verdict, and the deprivation of this right affected the basic fairness of his criminal prosecution. For the reasons discussed in detail above, the error was clear and obvious. Finally, this error substantially affected Mr. Fischer's rights and the fairness, integrity or public reputation of [the] judicial proceedings. Because there were several distinct acts and proofs that could support a jury verdict, and a substantial possibility of juror confusion or disagreement as to which acts or proofs made Mr. Fischer guilty of home invasion, it is impossible to discern which acts Mr. Fischer was found guilty of. Where the error in jury instructions denied Mr. Fischer of his right to a unanimous verdict and a fair trial, he is entitled to a new trial. *Yarger*, 193 Mich App at 537.

**B. Trial counsel's failure to object to the prosecutor's remarks during closing argument and his failure to request a unanimity instruction fell below an objective standard of reasonableness and prejudiced Mr. Fischer.**

As discussed in detail above, the prosecution charged Mr. Fischer with first-degree home under a theory that he entered without permission when he let himself in with the garage code. Then, at trial, it presented evidence of two, alleged, first-degree home invasions but never clarified for the jury which acts the charge was to be decided on. Finally, during closing argument, the prosecutor argued both sets of facts as evidence of the crime and stated that Mr. Fischer "kind of committed two home invasions that night." T2, 64.

Trial counsel never objected to this line of argument or countered it in his own closing argument. Nor did he request a special unanimity instruction to inform the jury of its duty to agree unanimously on the requisite underlying acts for the offense.

Trial counsel's failure to object to the prosecutor's repeated statements that either entry could satisfy the first element of first-degree home invasion constituted deficient performance under *Strickland*. Additionally, given the evidence and the prosecutor's argument, trial counsel's failure to request a specific instruction on unanimity also fell below an objective standard of reasonableness. *Id.* There could have been no strategic reason to allow the jury to consider two separate sets of acts in determining whether the elements of one count of  home invasion first degree were met, particularly where Mr. Fischer had a persuasive argument that when he entered the home the first time, it was with Ms. Miner's implicit permission.

To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694. The *Strickland* Court explicitly rejected an outcome determinative test, i.e. that counsel's deficient conduct more likely than not altered the outcome in the case. *Id*. at 693. The Court reasoned that the outcome of a case which includes deficient conduct is less entitled to a presumption of accuracy and fairness. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694.

Whether or not a jury would have decided differently if appropriately instructed is necessarily a difficult question to determine given the black box nature of juries. However, given the fact that there were weaknesses in the prosecution's case for both alleged home invasions—evidence that Mr. Fischer had implicit permission to enter in the first alleged home invasion, and uncertainty as to whether an assault or other qualifying crime occurred after the second entry—there is a reasonable probability that if the jury had to agree on the underlying acts, there never would have been a conviction at all. This is especially so where the record indicates that the jury did not blindly credit Ms. Miner's account of the evening. Despite Ms. Miner's testimony that

16

Mr. Fischer forcefully took her phone and tried to prevent her from calling the police, the jury acquitted Mr. Fischer of the interfering with a crime report charge. T2, 115, 121.

The proper remedy is a new trial.

**II.**   **Mr. Fischer is entitled to resentencing under state and federal due process requirements, where the prosecutor amended the habitual offender notice to increase Mr. Fischer's sentence enhancement from a habitual second to a habitual fourth outside the 21-day period provided by MCL 769.13. Further, trial counsel was ineffective for failing to object to the untimely amendment.**

*Issue Preservation and Standard of Review*

No objection was made to the sentencing of Mr. Fischer as a habitual offender on this basis. Review should accordingly be for plain error. *People v Kimble*, 470 Mich 305, 312 (2004). To avoid forfeiture, the defendant must establish that: (1) there was an error, (2) the error was plain, i.e. clear or obvious, and (3) the plain error affected substantial rights, i.e., the outcome of the lower-court proceedings. *Id.* The defendant also bears the additional burden of establishing that the unpreserved sentencing error "'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.'" *Id.*

Questions of statutory interpretation are subject to de novo review. *Id.* at 308-309.

*Discussion*

Mr. Fischer was sentenced as a fourth habitual offender to 15 to 50 years in prison. S, 14; See also Judgment of Sentence, Lower Court Record. Because the habitual offender enhancement was amended to increase his enhancement level after the 21-day period, he is entitled to resentencing as a second habitual offender.

On November 1, 2018, the prosecution filed the Felony Information in this case and within that Information gave notice of their intent to sentence Mr. Fischer as a second habitual offender. *Information*, attached as Appendix B. The notice referenced one prior felony conviction for stealing or retaining a financial transaction device without consent. Appendix B. Subsequently, on December 11, 2018, the prosecution filed an Amended Information. *Amended Information*, attached as Appendix C. The Amended Information increased Mr. Fischer's

habitual offender enhancement from second to fourth and listed two additional prior felony

convictions. Appendix C.

MCL 769.13 provides in relevant part:

(1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

Here, where Mr. Fischer waived his circuit court arraignment, the 21-day statutory period

ran from the filing of the Information charging the underlying offense—November 1, 2018.

Accordingly, the amendment to the habitual offender notice, filed December 11, 2018, was well

outside the statutory period and thus impermissible.

While the prosecutor may amend the habitual offender notice at any time to correct a

technical error, amendments that increase the enhancement level are not considered technical and

must be done within the statutory period. See *People v Hornsby*, 251 Mich App 462, 471 (2002)

(permitting the amendment of the charges the prosecutor relied on for a habitual offender level

when the level itself did not change); *People v Johnson*, 495 Mich 919 (2013) (holding that an

amendment correcting the arrest dates and offenses outside the permitted 21 days was proper

when it did not change Johnson's status as a fourth habitual offender).

In *People v Ellis*, this Court dealt with facts nearly identical to the ones at issue here, and

held that although the original notice of intent to charge as a second habitual offender was filed

within the statutory time period, the prosecutor erred in amending the notice six weeks later to

add additional prior convictions and charge the defendant as a habitual fourth because it

substantially affected the proceedings going forward. *People v Ellis*, 224 Mich App 752, 755

(1997). Specifically, this Court held that "the amendment may not relate to additional prior convictions not included in the timely filed supplemental information." *Id.*

Given that the conduct violates a statute and goes directly against prior precedent, all three prongs of the *Carines* test are met. In *People v Siterlet*, 299 Mich App 180, 190 (2012), *aff'd in part, vacated in part*, 495 Mich 919 (2013) our Supreme Court found that amending the complaint in such a way that the habitual offender level changed from third to fourth level fulfilled two prongs of the *Carines* test: that there be an error, and that it affected the outcome of the lower court proceedings. However, *Siterlet* Court found that it was not plain error because there was no clear case law on point at the time. Given that *Siterlet* itself decided the question and explicitly laid out the principle; if the error was not plain then, it certainly is now.

In this case, all three prongs are met: there was error, the error was plain post-*Siterlet,* and similarly to *Siterlet*, it affected the outcome of the proceedings. Amending the habitual offender notice to make Mr. Fischer a fourth habitual had a significant effect on his sentencing guidelines. As a fourth habitual offender, his guidelines were scored at 99 to 320 months. See *Sentencing Information Report* (SIR), attached as Appendix D; see also MCL 777.63 (Sentencing Grid for Class B Offenses). As a second habitual offender, with the variables scored as they were at sentencing, Mr. Fischer minimum sentence range would have been 99 to 200 months, MCL 777.63, making his current minimum sentence of 15 years at the top of the guidelines rather than in the middle.[10]

A defendant is constitutionally and statutorily entitled to be sentenced based on accurate

---

[10] Judge Geddis relied on the sentencing guidelines in crafting her sentence and noted that she agreed with the prosecutor's request for a sentence in the middle of the guidelines. S, 14. See *Francisco*, 474 Mich at 91 (consideration of where in the range the judge intended to sentence a person is relevant in determining that a mistake in scoring entitles the defendant to resentencing).

information, including an accurate sentencing guidelines range. *Peugh v United States*, 569 US 530, 536 (2013); *People v Francisco,* 474 Mich 82, 89, 91, 92 (2006). Since the error in amending the habitual offender enhancement, if corrected, would lead to a different recommended minimum sentence range, resentencing is required. *Francisco,* 474 Mich at 88-89.

*Ineffective Assistance of Counsel*

Mr. Fischer was entitled to the effective assistance of counsel at sentencing, which includes objecting to errors in the calculation of the sentencing guidelines. *Glover v United States*, 531 US 198 (2001); *People v Harmon,* 248 Mich App 522, 530-531 (2001).

To establish ineffectiveness, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial. *Strickland*, 466 US at 687. To show prejudice, the defendant must demonstrate a "reasonable probability" that the result of the proceeding would have been different absent counsel's errors. *Id*. at 694.

Appellate review of an ineffective-assistance claim is appropriate without a remand to the trial court for a hearing if "the record contains sufficient detail to support defendant's claim." See *People v Ullah,* 216 Mich App 669, 684 (1996). Here, a hearing is not required because the existing record is sufficient to allow this Court to review the claim.

Counsel performed deficiently by failing to object to the untimely amendment of the habitual offender enhancement which was plainly improper and resulted in an inflated guidelines range. There is no strategic reason for an attorney to allow his client to be sentenced based on an inflated and inaccurate guidelines range, and there is more than a reasonable probability that the court would have imposed a lower sentence but for this error. Accordingly, the error is prejudicial, and resentencing is required. *Strickland*, *supra*.

21

**III.     Mr. Fischer is entitled to resentencing under state and federal due process requirements, where errors in scoring the prior record and offense variables resulted in a higher sentencing guidelines range. Further, trial counsel was ineffective for failing to object to the erroneous scoring at sentencing.**

*Standard of Review and Issue Preservation*

The proper interpretation and application of the sentencing guidelines to the facts is a legal question that this Court reviews *de novo*. *People v Hardy*, 494 Mich 430, 438 (2013). The trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of evidence. *Id.*

Trial counsel did not object to the errors in scoring PRV 5 and OV 19. These variables were never discussed at sentencing and have been preserved through the contemporaneously-filed timely motion to remand. MCL 769.34(10).

OV 10 and OV 12 were discussed at sentencing. Trial counsel did not object on the record to the prosecutor's arguments and stipulated to "guidelines corrections." S, 5 (Trial counsel: "[I]f all the objections that Mr. Taylor is intending to bring up are the ones we talked about in the back, I will certainly stipulate to . . ." Prosecutor: "So if I may then, I'll just put them all on the record . . ."). Though at first glance, it may seem that trial counsel was expressing agreement with the prosecutor's scoring requests, it is undersigned counsel's understanding that the parties were placing on the record the results of guidelines arguments made during a "presentence conference." See S, 5-8. In other words, trial counsel was "stipulating" that what the prosecutor was placing on the record was what the trial court had already ruled on in chambers—not agreeing with the prosecutor's requests or expressing satisfaction with the trial court's decision. In sum, trial counsel did not "intentional[ly] relinquish[] or abandon[] a known right." *People v Hershey*, 303 Mich App 330, 349 (2013). Under the circumstances, these errors were forfeited rather than waived and have been preserved through the contemporaneously-filed

timely motion to remand. MCL 769.34(10).

Furthermore, review by this Court would be proper regardless of preservation of error because (1) correcting all of the guidelines scoring errors alongside the habitual offender enhancement error detailed *supra* in Issue II makes Mr. Fischer's current sentence outside the appropriate guidelines range, and he may appeal that sentence "regardless of whether the issue was raised at sentencing, in a motion for resentencing, or in a motion to remand," albeit under a plain-error analysis. *People v Kimble*, 470 Mich 305, 310 (2004); and (2) Mr. Fischer asserts that trial counsel's failure to adequately object to the scoring error constituted ineffective assistance of counsel.

*Discussion*

At sentencing, the trial court scored fifteen points for PRV 5, ten points for OV 10, ten points for OV 12, and fifteen points for OV 19. *SIR*, Appendix D. These scores are in error and a resentencing is required.

### A. PRV 5

At sentencing, the trial court assessed 15 points for Prior Record Variable ("PRV") 5, Prior Misdemeanor Convictions or Prior Juvenile Adjudications. See SIR, Appendix D. This score is in error and resentencing is required.

A score of 15 points under PRV 5 is appropriate where the defendant has "five or six prior misdemeanor convictions or prior juvenile misdemeanor convictions." MCL 777.55(1)(b). Though Mr. Fischer's criminal history as summarized in the presentence report reflects approximately 30 prior misdemeanor convictions, only two of those prior convictions should have been used to score PRV 5.

As an initial matter, the vast majority of Mr. Fischer's prior misdemeanor convictions are

for offenses related to driving with a suspended license and thus not scoreable. See PSIR, Criminal History. Only misdemeanor convictions for offenses against a person or property, controlled substances offenses, weapons offenses, or offenses involving operating a vehicle while under the influence of alcohol or a controlled substance may be counted as "prior misdemeanor convictions" for the purposes of PRV 5. MCL 777.55(2)(a). Five of Mr. Fischer's prior misdemeanor convictions fall into these categories:

    (1) <u>Operate While Impaired ("OWI"), 1994 (No. 4 of 38)</u>
    (2) OUIL, 1996 (No. 5 of 38)
    (3) Aggravated Assault, 1996 (No. 6 of 38)
    (4) <u>Use of Oxycodones, 2010 (No. 18 of 38)</u>
    (5) <u>Use of Analogues, 2010 (No. 18 of 38)</u>

See PSIR Adult History entries 4, 5, 6, and 18.

However, of these five "scoreable" prior misdemeanor convictions, three were obtained without the benefit of counsel and resulted in jail sentences: numbers 1, 4, and 5 above (underlined).[11] Because Mr. Fischer only had the benefit of counsel for two of his five prior "scoreable" misdemeanor convictions, PRV 5 should have been calculated at five points to reflect "2 prior misdemeanor convictions." MCL 777.55(1)(d).

A defendant accused of a misdemeanor is entitled to appointed trial counsel if actually imprisoned, unless the defendant waives this right. *People v Reichenbach*, 459 Mich 109, 120 (1998). Further, a conviction obtained in violation of a defendant's constitutional right to counsel cannot be used to enhance punishment for another offense. *People v Moore*, 391 Mich 426, 437-438 (1974); see also *People v Alexander (After Remand)*, 207 Mich App 227 (1994).

---

[11] The presentence report reflects that Mr. Fischer was provided counsel for his prior misdemeanor convictions for operating under the influence of liquor (OUIL) in 1996 and aggravated assault 1996. PSIR, Adult History No. 5 of 38 and No. 6 of 38.

The defendant has the burden of presenting prima facie proof of the uncounseled nature of the prior convictions. *Moore*, 391 Mich at 440-441. Upon such presentation, the burden will then be upon the prosecutor to establish the constitutional validity of the prior conviction. *Id.*

In *Alexander, supra,* the defendant's presentence report contained a notation that one of his prior convictions may have been obtained in violation of his Sixth Amendment right to counsel. *Alexander,* 207 Mich App at 229-230. The Michigan Court of Appeals remanded to the trial court, for the prosecution to establish that the defendant's prior convictions were not obtained in violation of his right to counsel. *Id.* at 230. The Court specifically noted that although the defendant had not challenged the use of the prior convictions at the time of sentencing, his post-sentencing challenge to the use of prior convictions was reviewable by the Court of Appeals and the trial court. *Id.* at 229-230.

Similarly, here, for the three prior convictions at issue, Mr. Fischer's presentence report indicates that either no attorney was present, or the presence of counsel is "unknown." See PSIR, Adult History No. 4 of 38 and No. 18 of 38.

**NO. 4 OF 38**

| Offense Date: | 01/12/1994 |
|---|---|
| Arrest Date: | 01/12/1994 |
| Arresting Agency: | Livonia Police Department |
| Charge(s) at Arrest: | Operate While Impaired |
| Court of Jurisdiction: | 16th District Court, #94L00356CD OD |
| **Final Charges:** | **Operate While Impaired** |
| Conviction Date/Method: | 01/19/1994 / Plea |
| Sentence/Disposition: | **12 months probation. 5 days jail or $200.00 fines and costs** |
| Sentence Date: | 03/10/1994 |
| Attorney Present: | Unknown |
| Discharge Date: | Unknown |

NO. **18 OF** 38

| | |
|---|---|
| Offense Date: | 04/13/2010 |
| Arrest Date: | 04/13/2010 |
| Arresting Agency: | Grand Blanc Township Police Department |
| Charge(s) at Arrest: | Ct. I: Possession of Oxycodone and Ct. II: Possession of Analogues |
| Court of Jurisdiction: | 67th District Court, #FYO1000458 |
| **Final Charges:** | **Ct. I: Use of Oxycodone and Ct. II: Use of Analogues** |
| Conviction Date/Method: | 12/06/2016 / Plea |
| **Sentence/Disposition:** | **5 days jail** |
| Sentence Date: | 12/06/2016 |
| Attorney Present: | No |
| Discharge Date: | 12/06/2016 |

Appellate counsel requested the register of actions from the district court for both of these cases. 16th District Court Register of Actions, #94L00356CD, attached as Appendix E; 67th District Court Register of Actions, #FY01000458, attached as Appendix F. These documents show that Mr. Fischer did not have counsel, did not waive his right to counsel, and was sentenced to jail time as a result of the conviction. Appendix E and Appendix F.[12]

In each of these cases, Mr. Fischer did not have counsel and was actually imprisoned. *Reichenbach,* 459 Mich at 120. Because these convictions were obtained in violation of Mr. Fischer's right to counsel, they cannot be used to enhance his punishment for another offense. *Moore,* 391 Mich at 426. Only two of his prior "scoreable" misdemeanor convictions were not obtained in violation of his right to counsel. Therefore, PRV 5 should be corrected to five points to reflect "2 prior misdemeanor convictions." MCL 777.55(1)(d).

**B.      OV 10**

The trial court assessed ten points for Offense Variable 10 (Exploitation of Vulnerable Victim). SIR, Appendix D. A score of ten points under OV 10 is appropriate where "[t]he offender exploited a victim's physical disability, mental disability, or youth or agedness, or a

---

[12] In 1994, Mr. Fischer served a jail sentence in lieu of fees and costs for the misdemeanor offense operating while impaired. There is no attorney listed and no indication of waiver of counsel. Appendix E. In 2010, Mr. Fischer served a jail sentence for two misdemeanor controlled substance convictions. There is no attorney listed and no indication of waiver of counsel. Appendix F.

domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b).

Here, the prosecutor argued that ten points was appropriate because Mr. Fischer exploited a

"domestic relationship" between himself and Ms. Miner where the two had "frequent

intermittent encounters." S, 6.

      The scoring under OV 10 was improper because Mr. Fischer and Ms. Miner were not in a

"domestic relationship" as defined by case law.

      To qualify as a "domestic relationship" for the purposes of OV 10, there must be a

familial or co-habitating relationship. *People v Jamison*, 292 Mich App 440 (2011). In *Jamison,*

this Court found that there was no "domestic relationship" where the defendant and the victim

previously dated, continued to have sexual relations, and kept some personal belongings at each

other's residences, but did not live together and did not have children in common. *Id.* at 441.

      The record does not reflect that Mr. Fischer and Ms. Miner had a familial or co-habitating

relationship, thus there was no "domestic relationship" for the purposes of OV 10. On the

contrary, the evidence at trial was that Mr. Fischer and Ms. Miner had a primarily sexual

relationship and had spent time together at her home. Ms. Miner explicitly stated that she was not

in a "dating" relationship with Mr. Fischer. T1, 93. They did not have children together. "If a

present dating relationship, standing alone, is not sufficient to establish a domestic relationship

under OV 10, *Jamison*, *supra*, an "occasionally intimate" relationship, as the prosecutor

described it at trial (T1, 78) falls far short. OV 10 should have been scored at zero.

## C.      OV 12

At Mr. Fischer's sentencing, the prosecutor requested that OV 12[13] be scored at 10 points to reflect two contemporaneous felonious criminal acts involving crimes against a person. S, 6. He asserted that the first contemporaneous felony was a separate home invasion that occurred when Mr. Fischer allegedly entered without permission a second time, and the second was interference with a crime report–"the offense that the jury acquitted on by or beyond reasonable doubt standard." S, 6. Despite the acquittal, the prosecutor urged the judge find "by a preponderance of the evidence that the offense actually did occur." *Id.* Judge Geddis scored OV 12 at 10 points. SIR, Appendix D. The finding violated of Mr. Fischer's due process rights.

A sentencing judge may not consider acquitted conduct at sentencing. *People v Beck*, __ Mich ___; ___ NW2d ___ (2019) (Docket No. 152934). "[D]ue process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *Id.* at __; slip op at 22. The jury acquitted Mr. Beck of open murder but convicted him of being a felon in possession of a firearm. *Id.* at __; slip op at 3. In sentencing him for the felon in possession count as a fourth habitual offender, the trial court sentenced Mr. Beck to a prison term of 240 to 400 months, far above the guidelines range (22 months to 76 months). *Id.* The sentencing court relied, at least in part, on its independent finding under a preponderance of the evidence standard that Mr. Beck had committed the murder. *Id.* at __; slip op at 3-4. The Supreme Court found this was a due process violation and remanded for resentencing. *Id.* at __; slip op at 21-22.

---

[13] Felonious criminal acts that occurred within 24 hours of the sentencing offense and have not and will not result in a separate conviction may be scored under OV 12. MCL 777.42(2)(a).

Though the *Beck* case involved the review of a departure sentence, the opinion does not limit the holding to departures. This Court has already determined that the holding in *Beck* applies to the scoring of the offense variables, in at least three unpublished opinions.

- *People v Davis*, unpublished opinion per curiam of the Court of Appeals, issued September 19, 2019 (Docket No. 343435), attached at p 12: "In light of *Beck*, we conclude that the trial court erred by assessing 100 points for OV 3 when scoring the guidelines for first-degree home invasion. The jury absolved Davis of any liability for the deaths of Welch and Newman. The jury's verdict acquitting Davis of the murder charges indicates that it determined that Davis's conduct was not a factual cause of the victims' deaths. Therefore, under *Beck*, the trial court could not rely on that conduct as a basis for scoring OV 3."

- *People v Johnson*, unpublished opinion per curiam of the Court of Appeals, issued November 26, 2019 (Docket No. 343848), attached at p 5: "Under *Beck*, defendant's due process rights were violated when the trial court assessed points for OVs 1 and 3 and imposed a sentenced based on the offense for which the jury acquitted him."

- *People v Morrie II*, unpublished opinion per curiam of the Court of Appeals, issued December 3, 2019 (Docket No. 344160), attached at p 3: After acknowledging the holding in *Beck* that a sentencing court cannot find by a preponderance of the evidence that a defendant engaged in conduct for which he was acquitted, this Court held that OV 12 should be scored at zero points because the trial court had "assessed five points for OV 12 based entirely on defendant's acquitted conduct."

Due process bars a sentencing court from scoring offense variables of the sentencing guidelines based on its own finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted.

For the same reasons discussed in *Beck* and the decisions from this Court, the sentencing judge violated Mr. Fischer's due process rights by assessing ten points for OV 12 based, in part, on acquitted conduct. OV 12 is correctly scored at five or zero points, depending on whether the "second home invasion" the court found had occurred is in fact a separate crime from the sentencing offense, see Issue I, *supra*, or part of a continuous course of conduct. See *People v*

*Carter,* 503 Mich 221, 227 (2019) (holding that two of the three shots fired could not be scored under OV 12 because they were part of the sentencing offense, "[g]iven that . . . the prosecution relied on all three gunshots as evidence of defendant's intent to commit murder or inflict great bodily harm").

### D.      OV 19

OV 19 was scored at 15 points. SIR, Appendix D. A 15-point assessment is appropriate where "[t]he offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services." MCL 777.49(b). Neither counsel nor the court discuss OV 19 at the sentencing hearing; however, the PSIR states that "OV 19 is scored at 15 points due to Mr. Fischer's threat of death if the victim called the police." See PSIR, Evaluation and Plan pg. 1. The record at trial does not support this claim. Ms. Miner never testified that Mr. Fischer threatened to kill or harm her if she called the police, and no other evidence supported such a conclusion. On the contrary, during the 911 call, when Ms. Miner told Mr. Fischer she was going to call the police, he can be heard telling her to "go ahead." T2, 78; P x 22.

Moreover, if OV 19 was scored at 15 points based on the evidence in the record offered in support of Count II: interference with a crime report, that score would still be incorrect. As discussed above, Mr. Fischer was acquitted of interfering with a crime report. "[D]ue process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged

in conduct of which he was acquitted." *Beck, supra,* slip op at 22. OV 19 was improperly scored at 15; the correct score for OV 19 is 10 points.[14]

  **E.**  **Need for Resentencing**

  At sentencing, Mr. Fischer's total PRV score was calculated at 55 points, placing him in Level E. SIR, Appendix D. His total OV score was calculated at 80 points, placing him in Level VI. Appendix D. And as Mr. Fischer was sentenced as a fourth habitual offender, the guidelines range was calculated at 99 to 320 months. Appendix D.

  Correcting PRV 5 from 15 points to 5 points would reduce the total PRV score to 45 and the PRV level to D. MCL 777.63. This correction alone would result in a new guidelines range of 84 to 280 months.

  Correcting all three OV errors would reduce the total OV score to 60 (or 55) points and the OV level to V. MCL 777.63. These three OV corrections would result in a new guidelines range of 87 to 290 months. Additionally, as OV Level V on the sentencing grid for Class B offenses encompasses 50 to 74 points, correcting OV 10 or OV 12 on their own would change the OV level. Correcting OV 19 from 15 to 10 points would not, on its own, alter the OV level, but could in combination with any of the other OV errors.

  If both the PRV and OV levels are corrected (from E-VI to D-V), the new guidelines range would be 78 to 260 months. And, when scored appropriately for a second habitual offender, see Issue II, the correct range is 78 to 162 months (as opposed to 99 to 320 months). A defendant is constitutionally and statutorily entitled to be sentenced based on accurate information, including an accurate sentencing guidelines range. US Const, Ams V, XIV; *Peugh,*

---

[14] Mr. Fischer concedes that a 10-point score is appropriate based on the conduct underlying his conviction for resisting and obstructing a police officer.

569 US at 536 (2013); Const 1963, Art 1, § 17; MCL 769.34(10); *People v Francisco,* 474 Mich 82, 89, 91, 92 (2006). Since the error in scoring Mr. Fischer's guidelines, if corrected, would lead to a different recommended minimum sentence range, resentencing is required. *Francisco,* 474 Mich at 88-89. Mr. Fischer's minimum sentence of 15 years (180 months) for home invasion first degree is in excess of the correct guidelines range, representing an unacknowledged upward departure. *People v Kimble*, 470 Mich 305, 310-312 (2004).

### F. Ineffective Assistance of Counsel

Mr. Fischer was entitled to the effective assistance of counsel at sentencing, which includes objecting to errors in the calculation of the sentencing guidelines. *Glover v United States*, 531 US 198 (2001); *People v Harmon,* 248 Mich App 522, 530-531 (2001).

To establish ineffectiveness, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial. *Strickland v Washington*, 466 US at 668, 687 (1984). To show prejudice, the defendant must demonstrate a "reasonable probability" that the result of the proceeding would have been different absent counsel's errors. *Id*. at 694.

Counsel performed deficiently by failing to object to the erroneous scoring of the guidelines at the time of sentencing. There is no strategic reason for an attorney to allow his client to be sentenced based on an inflated and inaccurate guidelines range, and there is more than a reasonable probability that the court would have imposed a lower sentence but for this error. Where the result is a higher guidelines range, the error is prejudicial, and resentencing is required. *Strickland*, *supra*.

32

## SUMMARY AND RELIEF AND REQUEST FOR ORAL ARGUMENT

**WHEREFORE**, for the foregoing reasons, Gary Thomas Fischer asks that this

Honorable Court reverse his convictions and/or remand for resentencing.

Respectfully submitted,

**STATE APPELLATE DEFENDER OFFICE**

/s/ Katherine L. Marcuz
BY:_____

**Katherine L. Marcuz (P76625)**
Assistant Defender
3300 Penobscot Building
645 Griswold
Detroit, Michigan  48226
(313) 256-9833

**Colleen Anderson**
Law Student
University of Michigan Law School

**Jackson Powers**
Law Student
University of Michigan Law School

Dated:  January 22, 2019