1    STATE OF MICHIGAN

2    IN THE 44ᵗʰ CIRCUIT COURT (LIVINGSTON COUNTY)

3    PEOPLE OF THE STATE OF MICHIGAN,

4    v                           Case Number:  18-25329-FH

5    GARY THOMAS FISCHER,

6         Defendant.

7    _____/

8                        RE-SENTENCING

9    BEFORE THE HONORABLE L. SUZANNE GEDDIS, CIRCUIT JUDGE

10         Howell, Michigan – Tuesday, February 15, 2022

11

12   APPEARANCES:

13   For the People:              MS. CAROLYN HENRY, P61109
                                  Attorney at Law
14                                210 South Highlander Way
                                  Howell, MI  48843
15                                (517) 546-1850

16   For the Defendant:           MS. KATHERINE MARCUZ, P76625
                                  Attorney at Law
17                                3031 West Grand Blvd., Ste. 450
                                  Detroit, MI  48202
18                                (313) 256-9833

19

20

21        TRANSCRIBED BY:         KRISTI COX, CER5451
                                  Certified Electronic Recorder
22                                (517) 546-7532

23

24

25

                                  1

TABLE OF CONTENTS

PAGE

WITNESSES:

NONE

EXHIBITS:

NONE

1       Howell, Michigan

2       Tuesday, February 15, 2022 - 2:15 p.m.

3           COURT CLERK:  Calling the matter of the People of

4       the State of Michigan versus Gary Thomas Fischer, 18-25329-

5       FH.  Appearances, please.

6           MS. HENRY:  Thank you.  Good morning.  Carolyn

7       Henry appearing on behalf of the People.

8           MS. MARCUZ:  Good morning, your Honor.  Katherine

9       Marcuz from the State Appellate Defender Office on behalf of

10      Mr. Fischer.

11          THE COURT:  All right, thank you.  And you are Gary

12      Thomas Fischer, correct?

13          MR. FISCHER:  Yes.

14          THE COURT:  Okay.  And this is, uh, the, uh, re-

15      sentencing because of some errors, uh, that occurred.  As far

16      as probation goes, uh, I will indicate that the presentence

17      investigation report update, the sentencing date, or re-

18      sentencing date should reflect 2/15/22 instead of 12/2/21.

19      There have been updates.  There was the original presentence

20      report, but this updated presentence report should reflect

21      the re-sentencing being 2/15/22 so it properly reflects how

22      many days credit he's getting because it changes the credit

23      time.

24          MS. MARCUZ:  Yes, your Honor.  The, the proper

25      credit is 1,246 days.

3

1          MS. HENRY:  That is correct, your Honor.

2          THE COURT:  That's great.  And then, uh, Ms.

3    Marcuz, if you would like to put or place on the record what

4    we've discussed in chambers a little bit.  I think that the

5    People, the Court, and you are on the same page.  I don't

6    think there's really any argument to be made, but I want you

7    to place on the record what we discussed in chambers because

8    it's important to make a record of that.

9          MS. MARCUZ:  Thank you, your Honor.  Would you like

10   me to stand?

11         THE COURT:  You can do whatever you want, wherever

12   you're most comfortable.  If you want to sit, that's fine.

13         MS. MARCUZ:  Okay.

14         THE COURT:  There are lots of papers, so I don't

15   blame you for sitting.  That's fine.

16         MS. MARCUZ:  We, uh, in chambers, we discussed a

17   couple presentence report corrections, as well as the

18   guidelines.

19         THE COURT:  Hmm-mm.

20         MS. MARCUZ:  The, with respect to the presentence

21   report, uh, in addition to credit, there are two other

22   corrections to make.  One is to the adult criminal history.

23   Numbers 25, 26, 36, and 37 refer to outstanding warrants.

24   And all of those have been resolved.  There are no pending

25   charges and no warrants remain outstanding.  So we would ask

1    that the language –

2           THE COURT:  On our, on our updated presentence

3    report dated 2/15/22, the one that we just looked at, it says

4    no pending charges.  So I think that takes care of, the

5    original presentence report had numerous, uh, bench warrants,

6    I do believe, out.  And I believe Mr. Fischer has taken care

7    of all of those things.  So the pending charges reflecting

8    none is correct.

9           MS. MARCUZ:  That is correct, yes.

10           THE COURT:  Okay.

11           MS. MARCUZ:  Correct on the cover page.  On some of

12    the entries, there's still language about outstanding

13    charges, but the cover page is correct that there are none.

14           THE COURT:  Where are there references to pending

15    charges within the presentence report?  Can you –

16           MS. MARCUZ:  Yes, your Honor.  Numbers 25, 26 –

17           THE COURT:  Oh, okay.  Within the –

18           MS. MARCUZ:  Yes.

19           THE COURT:  -- specific ones that you've just

20    mentioned.  You said 25, 26, 27, and 37?

21           MS. MARCUZ:  Twenty-five, 26, 36, and 37.  Those

22    four.

23           THE COURT:  And those have all been taken care of.

24           MS. MARCUZ:  Yes.

25           THE COURT:  Which is very smart.

1    MS. HENRY:  In the entry of number of 36 or 38,

2  it's indicated under sentence and disposition where it

3  remains outstanding at this time.  So that will need to be

4  deleted.  In the previous entries under 25 and 26, it's

5  indicated in final charges.  So the portion of the language

6  which indicates remains outstanding and remains outstanding

7  as of this date will need to be deleted.

8    THE COURT:  Okay, but I've got, number 25, it says

9  remains outstanding.  That should be deleted.  And number 26

10  of 38, and it says and remains outstanding as of this date

11  should be deleted at this time.

12    MS. HENRY:  Correct.

13    THE COURT:  Twenty-seven, it looks like it shows

14  that it's been taken care of.

15    MS. MARCUZ:  Yep, 27 is not a problem.  The next

16  one is 36.

17    THE COURT:  Thirty-six?  And I'm doing this kind of

18  slowly.  And I want the probation department to, uh, be clear

19  as to what we're talking about.  Probation, if you have any

20  questions or tell me that you don't understand or don't see

21  it, please just let me know.  I'll, I'll slow down.

22    Number 36 of 38 does have and remains outstanding

23  as of this date.  That can be deleted.

24    MS. MARCUZ:  Thank you, your Honor.  There is one

25  final one and that is 37 of 38.  And in final charges remains

1    outstanding as of this date.  That can also be deleted.

2         THE COURT:  Well, thirty-eight is this case.

3         MS. MARCUZ:  Yes, 37, number 37 –

4         THE COURT:  Yes, I got that.  And take out remains

5    outstanding as of this date.  The defendant has taken care of

6    those warrants.  So that's good for him.

7         MS. MARCUZ:  Thank you.  The, the other presentence

8    report, uh, correction is to the agent's description of the

9    offense.

10        THE COURT:  Okay.  When we say the other

11   presentence report, we've got to say a date or something

12   because we've got numerous dates.  I need to make sure

13   probation makes the corrections on the right presentence

14   report.  Are you talking about the one that happened on –

15        MS. HENRY:  The date of the report that we

16   discussed was April 4, 2019.  And that was made a part of the

17   updated reports.  So the corrected language is –

18        THE COURT:  What report is that?  What report is

19   added, they added a Judge Hatty sentence presentence report

20   onto or into the other report.  What is the other report's

21   date?  Because it's not in my 2/15/22 one, right?

22        MS. HENRY:  Correct.

23        THE COURT:  It doesn't have Judge Hatty's one.

24        MS. HENRY:  You had another, uh, you had another

25   packet of reports.  And within that packet of reports,

7

1        there's a PSI that's dated 4/4/2019.

2                    THE COURT:  Okay, but can you say what was the

3        sentence on the face page?

4                    MS. MARCUZ:  This was the original presentence

5        report —

6                    THE COURT:  Okay.

7                    MS. MARCUZ:  -- Judge that you had at the original

8        sentencing.

9                    THE COURT:  Okay.

10                    MS. MARCUZ:  And it has the evaluation and plan and

11        the agent's description of the offense.  And that has been

12        made a part of the updated report for today.

13                    THE COURT:  Okay.  Slow down a little bit.  The

14        original presentence report says dated 12/2/21 on the face

15        sheet.  But within that report is another presentence report

16        dated 4/4/19.  That was added into the original presentence

17        report.

18                    MS. HENRY:  That's correct.

19                    THE COURT:  That's not the Judge Hatty one though.

20                    MS. HENRY:  That's correct.

21                    THE COURT:  Okay.  I, I've got that.  Okay.  And

22        where should we go from there?

23                    MS. MARCUZ:  From there, we go to the agent's

24        description of the offense, which is on page three of that

25        report.  And in the agent's description of the offense in the

1    middle of the bottom paragraph, we are adding a sentence

2    after he then struck her head with his fist, Ms. Minor struck

3    back.  After that sentence, we are adding the sentence at

4    trial Ms. Minor testified that she struck defendant first.

5         THE COURT:  I had it after the defendant refused

6    before it states he then struck her head with his fist.  I

7    inserted at trial, Ms. Minor testified that she struck

8    defendant first.

9         MS. MARCUZ:  I, uh –

10        THE COURT:  Are you saying that should be in a

11   different spot?  Because I thought it made sense because then

12   it says he then struck her head with his fist.  And I think

13   that was the, we all agree that Ms. Minor hit him first.  And

14   she testified to that, I do believe.  But then it says he

15   then struck her head with his fist after that.  And that's in

16   chronological order I think.

17        MS. MARCUZ:  I understand that, your Honor.  I

18   guess my, uh, this agent's description of the offense doesn't

19   track with the, the trial testimony.

20        THE COURT:  Okay.

21        MS. MARCUZ:  And at trial, Ms. Minor testified that

22   she, she struck him first and pushed him; and then he hit

23   her, uh, in the head with her cell phone.  So I think I

24   thought we were adding this sentence to make clear that her

25   trial testimony was not, was different than what we have here

9

1    in the agent's description of the offense.  If we want to put

2    it first, I would just ask that the next sentence be then he

3    then struck her instead of head with his fist.

4              THE COURT:  Okay.  So what I have that Ms. Minor

5    asked him to leave repeatedly; the defendant refused.  At

6    trial, Ms. Minor testified that she struck defendant first.

7    He then struck her head with his fist.  Ms. Minor struck

8    back.  At this time, defendant threw her to the floor,

9    started to slam her head onto it.  Do you see where I'm

10   talking about?

11             MS. MARCUZ:  I do.

12             THE COURT:  Is it correct?

13             MS. MARCUZ:  Uh, it is, it is not consistent with

14   the, completely consistent with the trial testimony.  I don't

15   want to get too stuck, like stuck –

16             THE COURT:  No, just tell me where you think it

17   should go.  I'm, I'm trying to make sure that the pre is, is

18   correct.  And it's very confusing when we're adding

19   sentences.  Under agent's description of the offense, where

20   do you think that sentence should be so I can tell probation

21   what we're talking about.

22             MS. MARCUZ:  I think we can place it first as, as

23   the Court suggested –

24             THE COURT:  Okay.

25             MS. MARCUZ:  -- and then just change the next

                                    10

1    sentence to he then struck her or we can have it at the end

2    as kind of a, a different account of what happened.  Either

3    one of those would work for me.

4            MS. HENRY:  I would have no objection to the Court

5    leaving the next sentence as he then struck her with a period

6    and deleting the head with his fists.

7            THE COURT:  You want to take out he then struck her

8    head with his fists?

9            MS. HENRY:  If we can just leave it as he then

10   struck her period.

11           THE COURT:  Okay.  So for probation's sake, I want

12   to be very clear that the inserted sentence should be that at

13   trial, Ms. Minor testified that she struck defendant first.

14   And I think the prosecutor agrees with that.

15           MS. HENRY:  That is correct.

16           THE COURT:  Did you get that?  Probation, do you

17   have that?  Okay.

18           COURT CLERK:  He's muted.

19           THE COURT:  He's muted?

20           PROBATION AGENT:  Yes, your Honor.  I do have that.

21   Thank you.

22           THE COURT:  Oh, great.  Thanks.  Thank you.  Go

23   that.

24           MS. MARCUZ:  I didn't realize that probation was

25   back there.

1    THE COURT:  Yeah, he's over your head.

2    MS. MARCUZ:  I wondered where you were looking.

3    THE COURT:  Yeah.

4    MS. MARCUZ:  Okay.  Those are our two presentence

5    report corrections.

6    THE COURT:  Okay.

7    MS. MARCUZ:  Moving to the guidelines —

8    THE COURT:  Uh-huh?

9    MS. MARCUZ:  — we have agreed that PRV5 is

10   correctly scored at five points.

11   THE COURT:  Yes, so again going back to the re-

12   sentence report that we've just re-dated for the re-

13   sentencing 2/15/22, if you go to the guidelines, PRV5 should

14   be five, not 15.

15   MS. HENRY:  That is correct.  We concede on the

16   scoring of PRV5 and request the Court to change it from 15

17   points to five points.

18   THE COURT:  And that makes, I believe that is the

19   total corrections to the PRV's then and the total PRV would

20   be 45 rather than 55, which makes it a PRV level of D as in

21   dog.  Okay?

22   MS. MARCUZ:  Thank you, your Honor.  That's

23   correct.  And that is the only correction to the PRV's.  We

24   have a couple of corrections to the offense variables.

25   THE COURT:  Hmm-mm.

1      MS. MARCUZ:  The first is OV10, which we agree

2  should be scored at five points instead of 10.

3      MS. HENRY:  That is correct, your Honor.

4      THE COURT:  Thank you.

5      MS. MARCUZ:  The second is OV12, which we agree

6  should be scored at zero instead of 10.

7      THE COURT:  Hmm-mm.

8      MS. HENRY:  That is correct, your Honor.

9      MS. MARCUZ:  And the third one is OV19 -

10      THE COURT:  Hmm-mm.

11      MS. MARCUZ:  -- which we agree should be scored as

12  10 instead of 15.

13      THE COURT:  Right.

14      MS. HENRY:  That is correct.

15      THE COURT:  Which reduces the total OV calculations

16  to 60 -

17      MS. MARCUZ:  Yes, your Honor.

18      THE COURT:  -- and the OV level being five.  We all

19  agree to that, right?

20      MS. HENRY:  That is correct.  And that will change

21  the guideline range to 78 months to 162 months.

22      THE COURT:  Right.  I will note for the record that

23  this case was remanded, one of the reasons being that he was

24  sentenced as a habitual offender fourth and it's clear that

25  the Court of Appeals sent it back, indicating that the

13

1   prosecutor's office did not, uh, give notice to the defendant

2   timely and therefore, they had charged him as being an

3   habitual criminal second offense.  And that is properly

4   reflected on the updated presentence report being a maximum

5   penalty of 30 years rather than life, which is significant.

6          So going to page two of the PSI, it says, the

7   guideline range says 99 to 200.  It should be 78 to 162.  And

8   again, uh, on that same page, it should reflect that he has

9   credit of 1,246 days rather than the 856.  And on counts,

10   that would be for count one, count three, and count four

11   there would be no change.  Okay?

12          MS. MARCUZ:  That is correct.  Yes, your Honor.

13          THE COURT:  Anything else?

14          MS. MARCUZ:  Yes.  May I –

15          THE COURT:  Absolutely.

16          MS. MARCUZ:  -- address the Court?  Thank you.  It

17   feels strange sitting.

18          THE COURT:  Oh, that's fine.  It's perfectly fine.

19          MS. MARCUZ:  Uh, at this re-sentencing, your Honor

20   has the benefit of seeing a fuller picture of Mr. Fischer,

21   not only through the letters that his family provided, but

22   also through, uh, getting to see how he has conducted himself

23   for the last three years; how he has used his time; and how

24   he has grown and changed in that time.  And I want to focus a

25   little bit on the things that Mr. Fischer has done since he

14

1     was last before this Court for sentencing.

2         The first and, and probably the most important is

3 that he has maintained his sobriety.  He has been sober since

4 the night of this incident.  And he has done that

5 intentionally.  We were talking the other day via video and

6 he had said something to me.  He said you know, you can, the

7 Court can tell you to get sober; your family can tell you to

8 get sober; your partners can tell you to get sober - but if

9 you don't want it, it doesn't work.  And I know this now

10 because I want it now.

11         He, his substance abuse disorder, uh, is really at

12 the heart of his bad choices and why he was out of control

13 that night.  And getting sober is the catalyst, has been the

14 catalyst for a lot of other change, including really taking

15 accountability for his actions.  And he knows that

16 maintaining accountability is a part of lifelong recovery.

17         He hasn't, because of his earliest release date,

18 been able to participate in MDOC substance abuse programming.

19 And I called Muskegon Correctional Facility, where he is now

20 after talking to your Honor the last time we were here to see

21 if there's any way that he can have programming now.  And

22 there's not.  It won't be available to him until he gets

23 closer to his earliest release date.  But he's doing

24 everything he can to work on it now.  He has some AA self

25 study guides.  And he's doing that.  He is also planning for

1   what recovery will look like when he is released, including

2   outpatient therapy.

3          Another thing is that his, this is, this is Mr.

4   Fischer's first time in prison.  And he has done really well.

5   He has been in prison in the midst of a global pandemic, as

6   well.  He has had three minor misconducts in the three years

7   he has been there.  These were for being out of place,

8   staying in the library too long was one of them; another out

9   of place; and then one for insolence.  The last misconduct

10  was nearly a year ago now, it was May of '21.

11         He was, he has constantly been managed at a lower

12  security level than what he was classified as because of his

13  good behavior.  And he was recently transferred from Bellamy

14  Creek to Muskegon Correctional Facility to be in a level two

15  placement.

16         He has, he works the entire, he worked almost the

17  entire time he was at Bellamy Creek.  And he had a job in the

18  law library there that he really loved.  It gave him a great

19  amount of purpose and value.  He's a smart guy and he enjoyed

20  that job of helping others.  I want to read the comments to

21  the work assignment evaluation that he received on November

22  12th.  So he got this evaluation right before he was

23  transferred from, from Bellamy Creek to Muskegon.  It says,

24  "The law library has depended on Mr. Fischer to help maintain

25  its high level of service to the general population of

16

1  Bellamy Creek Correctional and his help specifically with
2  filing law library orders for the segregation unit is
3  exemplary.  He also has very good customer service skills,
4  getting along with the library users while helping fill their
5  needs.  Mr. Fischer has also demonstrated a willingness to
6  help the library users with their case searches of the
7  (indecipherable) system.  And he got, uh, 39 points out of 39
8  points.  So his performance was a perfect score.
9          And, you know, I, I mention this because it, uh,
10 this is a very sought after job and one that he really
11 excelled in.  And he's been using his time productively.  And
12 as the Court mentioned, part of that has been, uh, resolving
13 any outstanding cases that he had, including paying off, uh,
14 existing fines and fees; paying off the fees to this court
15 that he owed.  So he has been actively trying to be
16 productive with his time and focus on positioning himself to
17 do well when he is released.
18         I don't, I don't want to, uh, minimize Mr.
19 Fischer's behavior on that night at all, but I would like the
20 Court to know that he does not have a history of domestic
21 violence at all.  He has no domestic violence convictions, no
22 arrests, no PPO's.  He is not someone that has ever been
23 abusive to his partners.  This, this conduct that night was
24 truly an aberration.  It is not who he is.
25         He asks the Court, and we ask the Court for a

1    sentence at the bottom of the guidelines which represents an

2    opportunity for him to continue his progress and recovery in

3    the community and to be there for his family in the way that

4    they have been there for him.   A sentence at the bottom of

5    the guidelines is a six and a half year prison sentence.

6    It's a serious sentence.   And at the end of that six and a

7    half years, uh, the parole board will have an opportunity to

8    evaluate Mr. Fischer and determine if he's ready to be

9    released.   He would be supervised after that and he would

10   receive services from the MDOC.

11       And also, as laid out in the sentencing memorandum,

12   when he is released, he has a plan in place for re-entry.   He

13   has skills.   He has job opportunities.   He has housing and he

14   has an amazing support network.   He has an incredibly loving

15   family, uh, who have supported him throughout this and who, I

16   think he has always appreciated, but has grown to appreciate

17   even more under, under this, in this situation.

18       Your Honor, a sentence at the bottom of the

19   guidelines meets all of the sentencing goals: rehabilitation,

20   punishment, deterrence, protection of society.   It can be

21   accomplished with the, the minimum sentence at the bottom of

22   the guidelines.   And we ask your Honor to impose that

23   sentence.   Thank you.

24       THE COURT:   Thank you.   Ms. Henry, I kind of went

25   in the wrong order.   I should have started with you.   Do you

18

1   have any additions or deletions that should be made to the

2   amended, uh, presentence report, amended or updated

3   presentence report dated 2/15/22?  I would ask probation to

4   attach to that updated presentence report the, the other one

5   that we were talking about that, uh, we made some corrections

6   in.  That should be added to this presentence, updated

7   presentence report so the Court of Appeals knows what we're

8   talking about.

9           MS. HENRY:  Thank you.  Your Honor, I've had an

10  opportunity and I appreciate the Court as well as defense

11  counsel having the off-record conference with us regarding

12  the sentencing guidelines issues, as well as any updates to

13  the presentence report in this matter.  I do concur with the

14  corrections, additions, and deletions that have been placed

15  on the record for the presentence report in this matter.  And

16  I would also concur, uh, with the re-scored sentencing

17  guidelines in this matter.

18          Your Honor, as it relates to allocution in this

19  matter, if I may inquire if Heather Minor is present?  I

20  don't believe she's present in Zoom.  Thank you.

21          THE COURT:  No, she's not.  Right?

22          MS. HENRY:  Judge —

23          THE COURT:  Okay, thank you.

24          MS. HENRY:  — Ms. Minor was the victim in this

25  matter.  And I believe this was discussed at the time of the

19

1  original sentencing before this Court – and I do appreciate

2  the allocution that was placed on the record by defense

3  counsel in this matter, but we certainly cannot forget the

4  serious and significant incident that brings this defendant

5  before the court.  While defense counsel indicates that this

6  is, this incident is not who Mr. Fischer is, the jury said

7  otherwise.  This is the person that Mr. Fischer is.

8  　　　When defense counsel indicated he's never been

9  abusive to any of his partners, he was abusive to his partner

10  in this matter.  There was a relationship in this matter with

11  Ms. Minor.  And this was such a significant incident that

12  brings this defendant before the Court that it caused serious

13  injury to Ms. Minor.  The victim in this matter sustained

14  serious injuries that included a broken tooth, a cut lip, she

15  had pain to her head, she was diagnosed as having a

16  concussion as a result of this significant attack that the

17  defendant did to her.

18  　　　Your Honor, as well, within the presentence report,

19  Mr. Fischer has a long criminal history in this matter,

20  albeit there are many incidents that include driving while

21  license suspended.  And when we look at driving while license

22  suspended offenses, we oftentimes say well, those are

23  misdemeanors; those are traffic offenses.  But the Court can

24  take note that essentially, Mr. Fischer just continued to

25  drive while his license was suspended.  He continued to break

20

1   the law when he knew that it was breaking the law.  He was

2   not supposed to drive because his license was suspended.

3   That's a privilege that the State of Michigan gives to Mr.

4   Fischer and he ignored that privilege.  And he did

5   essentially whatever he wanted to do.

6       Your Honor, also on Mr. Fischer's history, he has a

7   long history that includes multiple failed probations.  While

8   I appreciate the information that's been placed on the record

9   in this matter that he is doing what he needs to do while he

10  is in prison, he not consuming substances; he is working;

11  he is being essentially a person who is lodged following some

12  of the rules in there, although the Court can take note of

13  the misconducts that he has received while he's been in the

14  Michigan Department of Corrections.

15      In this matter, your Honor, I am requesting your

16  Honor to sentence him at the top end of the guidelines.  I

17  think the incident; the victim, who has to suffer with this

18  extremely traumatic event for the rest of her life, I believe

19  that a sentence at the top end of the guidelines is

20  appropriate in this matter.  I would ask the Court to

21  sentence him to 162 months in the Michigan Department of

22  Corrections.

23      THE COURT:  Okay.  Uh, Ms. Marcuz, do you have

24  anything, because I went kind of out of order, do you have

25  any response or anything you wanted to add?

21

1      MS. MARCUZ:  Your Honor, I know that Mr. Fischer

2  would like to address the Court.

3      THE COURT:  I'm definitely going to get to him, but

4  do you have anything else -

5      MS. MARCUZ:  No, I, I -

6      THE COURT:  Because I took you out of order, I

7  wanted to make sure you covered everything that you wanted to

8  cover.

9      MS. MARCUZ:  Thank you, your Honor.  I did.  And I

10  will let, uh, I will let Mr. Fischer speak for himself.  And

11  if I missed anything, I'm sure he will tell you.

12      THE COURT:  Okay.  Paul, can you get Mr. Fischer a

13  Kleenex?

14      MR. FISCHER:  Thank you.

15      THE COURT:  You're welcome.

16      MR. FISCHER:  Thank you, your Honor.  Thank you.

17      THE COURT:  If you want to take a couple of

18  minutes, Mr. Fischer, it's okay.

19      MR. FISCHER:  I'm really nervous.

20      THE COURT:  I know.  And I would be in your

21  position, as well.  I, uh, we just want to make sure that you

22  say what you want to say at this juncture because it's

23  important to, uh, it's important to the Court that you have

24  your say.

25      MR. FISCHER:  I appreciate the opportunity.  Uh,

1   the first thing I wanted to do when I got here was to, I

2   wanted to apologize to Heather, to be able to actually do

3   that.   I made, I made a series of terrible decisions that

4   night.   I'm embarrassed.   I'm ashamed.   I realize that I

5   traumatized her.   It was never meant to hurt her or cause any

6   pain.   And I know that ultimately, that did happen.   But from

7   the bottom of my heart, I am in remorse for it and I'm sorry.

8   It doesn't erase it, I know.   It's just words, but I mean it.

9   And I know I mean it.   And I was hoping to be able to say it

10   to her.

11        Now this part is still tough for me, as well.   But

12   I've been addicted to alcohol and prescription drugs for most

13   of my adult life.   It's not an excuse, it's an admission.   I

14   was introduced to alcohol at a young age and continued to

15   drink through my early teens.   And then I got in a bad car

16   accident when I was young.   And I was prescribed opiates and

17   I got addicted to those.   I continued to drink.

18        I've known for a long time that I've had an issue

19   with substance abuse.   But I never, I never took it

20   seriously.   I never sought help for it.   I never tried to get

21   to the bottom of my addictive personality.   I can, I can

22   attribute nearly any bad thing that's ever happened in my

23   life to my addiction.   Horrible judgment.   At times, I've

24   made bad decisions.   I've made mistakes.   And I know now this

25   is like a culmination of that, you know.

1    But as Ms. Marcuz said, I'm taking my sobriety

2  very, very seriously.  And it's, I know it's long overdue.

3  And it's, it's a shame that I had to go to prison to, to

4  realize that being sober is the only way I'm going to be able

5  to live my life.  It's paramount to living a normal life and

6  staying out of trouble and getting my act together.  I know

7  when I get out, with the help of my family and my attorney

8  and the SADO re-entry services, I'll, I mean, I'm not gonna

9  sit here and say I can do it 100% because I have to try, but

10  I will utilize all of those resources.  And, and I'm serious.

11    It's been important to me since the beginning of

12  all of this to come out better on the other side, not worse.

13  And that can be easy to do because I'm in a rough

14  environment.  But I took my job seriously and that was a

15  motivator for me to, to become better and help guys that

16  needed a hand and, and I liked it.  So I've had a lot of time

17  to reflect, obviously - you know, almost three and a half

18  years.  And it's humbling to look at yourself in the mirror

19  and not necessarily love everything about that person staring

20  back at you.  It's, it's hard.  But I'm aware that I needed

21  to grow up and get my act together.  And it sucks because I'm

22  almost 50.  And I know it's a cliché, but better late than

23  never.

24    Regarding my drivers license, it's horrendous.  I

25  mean, there's no other way around it.  It, my driving record

24

1  is terrible and I know that.  And I shouldn't have been

2  driving.  And I'm not making excuses for it, but in that same

3  note, I have addressed all of my warrants.  I did plea by

4  mails.  I reached out to every single jurisdiction.  I

5  handled every warrant.  I used the stimulus checks from the

6  government to pay off those fines.  So now when I get out, I

7  can actually get a drivers license.  And that's a huge

8  relief.  I haven't had a license in a long time.  That's

9  obviously beneficial to me succeeding.  Excuse me.  I'm

10  sorry.

11        Finally, I'm backed by the most amazing support

12  system.  They've been there from the very beginning and

13  they'll continue to be there.  I'm so sorry.  I'm sorry.

14  It's like they're doing time with me, you know?  I've screwed

15  up my family, but I thank you all so much.

16        My mom and dad asked me if I would come live with

17  them when I get out, while I rebuild my life.  It will be

18  like a two-way street.  I can help them and help me.  I can

19  immediately go back to work with the union.  I've been a

20  vested member for almost two decades.  I mean immediately.

21        I, I promise you, your Honor, if you give me an

22  opportunity, I will never be in this situation again.  Ever.

23  Not only have I embarrassed myself and my family, but I

24  caused suffering for Heather and her family.  I know you

25  don't know me.  And the prosecutor doesn't know me.  But I am

1    truly remorseful about that.  And that regardless of what you

2    think of me, that is not me.  I'm not that guy.  I'm not a

3    monster; I'm not evil.  I'm not making excuses either.  That,

4    that was me that night.

5          But I am capable of being a productive member of

6    society again.  And I am forever changed for the better, not

7    for the worse, by this situation.

8          So I appreciate your time.  Thank you.

9          THE COURT:  All right.  Well, thank you.  I, uh, I

10   think it's so important that you do have family support.  I

11   think it's very, uh, nice of them to not only write letters

12   on your behalf, but talk of your future and what you're going

13   to do in the future; make the offer that you can live with

14   your mom and dad is really nice.  I can see a lot of moms and

15   dads just saying no, he's in prison now; we're never taking

16   him back; he's done something wrong; that's it.  That's not

17   happened to you.  You have a lot of people who truly love

18   you.  There's no doubt in my mind.

19         But the, and I do see that the man that sits here

20   today has changed.  You did do something horribly wrong to

21   another individual.  I do attribute it to alcohol because

22   when I read all of the letters of support, it doesn't show

23   you to be an inconsiderate individual.

24         In this particular case, this was a very strange

25   situation in that you would have Ms. Minor as a girlfriend –

26

1   and we've argued over whether or not there was a

2   relationship, domestic relationship or not. We've decided

3   that case law says that there was not a domestic

4   relationship. So you got less points for that. But it was

5   surprising to me when I read that while you were doing this

6   with Ms. Minor pretty often it seems like, you also had a

7   fiancé. That doesn't tell me of a very nice person. You

8   know, someone who loves you, you don't take for granted.

9   Someone that wants to be your friend, you don't take for

10  granted. And in this case, it's unfortunate, but Ms. Minor

11  must have trusted you a whole lot because she allowed you to

12  have her garage door opener, which is how you could get in

13  and out of her house. So I don't think that she believed at

14  the time that you were necessarily a bad person. But that's

15  quite inconsistent with what happened on this particular day.

16      And you're right, you have a lot of traffic

17  incidents. When I looked at the presentence report

18  originally, I saw 31 misdemeanors or something; three prior

19  felonies. That's a lot. But as your attorney has said and

20  what you've said, most of them were driving. You just

21  continuously drove when you shouldn't have. So you disobeyed

22  the law. You shouldn't have done that, but it's not the most

23  egregious situation that any of us have seen. And that's why

24  you didn't get any additional points, uh, for that.

25      I have to state here, and I want to make sure that

27

1    it's understood that I believe that your attorney has done an

2    outstanding job in your appeal.  She cited transcripts,

3    numbers, and case law, and sentencing guidelines that have

4    changed your guidelines considerably.  I don't think that

5    people in her position have an easy job.  It's like going

6    against the current because the jury convicted you on some

7    serious crimes.  And she has gone back over, read the

8    transcripts, and read what she believed to be mistakes on the

9    Court's part and I agree with her.  She, uh, as you can see,

10   the prosecutor also agreed with her on some of the mistakes

11   that were made at the sentencing.  That doesn't happen a lot.

12   Like I said, she's done an outstanding job.

13            She has shown to the Court how you've done in

14   prison and quite frankly, my feeling is you should do well in

15   prison.  You're in prison for a reason.  You have to obey the

16   rules.  You need to obey the rules.  It shouldn't be like oh

17   yay, he's obeying the rules.  You have to.  The fact that you

18   haven't drank since the night of the incident, I would think

19   would be mostly because you've been incarcerated since the

20   day of the incident.  So, but I do think that's beneficial to

21   you because now you know what it feels like not to drink.

22            I equate sometimes alcohol with poison to some

23   people.  One drink changes you totally because you don't stop

24   at one drink.  You have drinking and driving related offenses

25   in the past, but most of, uh, most of your misdemeanors have

28

1   been, uh, a lot of them have been DWLS's.

2       Again, when I read the letters of support and when

3   I read your attorney's, your appellate attorney's brief, she

4   made really excellent points.  It's very well written.  You

5   being in a law library, what can I say?  Maybe you'll be a

6   paralegal someday.  You learn the law and you maybe can't be

7   a lawyer, but a paralegal?  They're very valuable.  And maybe

8   you'll have that future.

9       You have to continue doing well in the prison

10  system if you want to get out on parole.  I want you to do

11  well.

12      The point that I'm attempting to make is that the

13  person that I saw at the jury trial and what I knew about

14  you, uh, does seem to be a different person than what you are

15  here today, which is huge because that shows me

16  rehabilitation is working.  But you're right – no one can do

17  it for you.  If you don't take advantage of every program, of

18  every opportunity while in prison, you're a fool.  They are

19  really trying to get you to change and be a better person.

20  And for the most part, reading about your time in prison, I'm

21  happy for you.  You have to be off the drugs.  You have to be

22  off of alcohol.  And those are the two main issues that I see

23  that you have in your life.

24      Again, the facts of this case are not, are not good

25  for you.  It must have been horrible for the victim to wake

29

1    up and you were in her bed when she said no and told you to

2    leave.  When you came back, that can be very, uh, scary to

3    say the least.  Even though she knew you, she didn't know

4    that side of you, I don't think.  And like I said, I think a

5    lot was driven by alcohol.  And hopefully, you will continue

6    your life alcohol-free.  I will tell you this - it's an every

7    day life situation.  If you go to live with your parents,

8    hopefully your parents will clean out any and all kinds of

9    alcohol or drugs from their house so that you cannot ever

10   abuse them.

11         Again, Ms. Minor is not here.  It would have been

12   nice for her to be here if you were going to apologize to

13   her.  On the other hand, I'm not sure how she would feel

14   about that.  She might still be angry.  I think I'd be angry

15   with you, too.  You were supposed to be a friend.  And you

16   were helping her to some extent.  This night, you went

17   backwards totally and you were a violent person.  And as I

18   stated, I think a lot of that is attributable to alcohol.

19         Again, Mr. Fischer, I do see that you're very

20   remorseful.  I do see that you have been in trouble with the

21   law before.  You can call it a mistake, but when you do it

22   again, I always say that's not a mistake.  You know what, you

23   had an impaired driving a long time ago.  And then you got a

24   drunk driving after that and that's unfortunate.  You should

25   have said okay, I've got an issue; I have to stop.

1        I also see that you have ethnic intimidation,

2   aggravated assault where you have violated probation on that

3   case, as well.  So I think you were, looking at your record,

4   you were out of control because you were just doing what you

5   wanted to do, when you wanted to do it.

6        I want your family and friends and relatives to

7   know that I've read their letters in support of you.  They

8   all seem to love you very much and say this isn't the same

9   guy that I know.  They know someone that helped someone go to

10  the west side or east side of the state and paint a house to

11  help somebody else; to take apart a bed to help somebody

12  else.  They put things in their letters that told me wow.  He

13  can be a kind, generous individual.  And I'm very pleased to

14  hear that you are not, uh, taking, and what you said was I've

15  become a better person.  And I think that's important because

16  prison is kind of a last resort that we hate to sentence you

17  to when you're a good person normally.  But obviously, we had

18  to get your attention.  And unfortunately, you hurt somebody

19  else - what you believed to be a friend - very much.

20       Your attorney has asked for the minimum amount.

21  The prosecutor has asked for the maximum amount.  And again,

22  there are a lot of people I see at sentencing that are

23  remorseful.  I think every single one of them practically

24  tells me that they're going to get treatment; they want

25  treatment.  And it's unfortunate that this incident had to

31

1   happen before you got the help that you needed to get.

2          But I do believe the letters and some of the

3   specifics that are in the letters do tell me you're a

4   different person to some people and can be that person again.

5   But you also have to be punished for your crime.  And that's

6   why I understand why your attorney is asking for the low end

7   of the guidelines.  And I see that the prosecutor is

8   representing the public and the public safety and asks for

9   the top of the guidelines.

10          A lot of people think that judges don't care about

11  specific individuals, but I do.  I've read your attorney's

12  brief several times.  I've read the prosecutor's brief, as

13  well.  We've made corrections to the guidelines which

14  significantly impacts your sentence.  Again, rehabilitation,

15  hopefully, you are taking advantage of everything.  I will

16  tell you I don't know, I do believe that they have AA classes

17  either in the prison or on Zoom.  You can attend AA classes

18  sometimes.  I don't know if the prison allows you to do that.

19  But if I were you, I'd go to every single one of them to hear

20  not just about your situation, but understand other people's

21  situations, as well.  You could even be a mentor for some

22  people.  You've kind of been there, changed your ways.

23  You're going to be a better person when you come out, which

24  is again,  applaud the fact that you saying that prison is

25  not going to make you a worse person, it's going to make you

1     a better person.  That's a positive.

2                    Again, uh, I have reviewed your attorney's brief

3     several times.  And she points out some great stuff as far as

4     you being, working in the law library.  Having three

5     misconducts is not good, but they are minor misconducts.

6     Don't get any more.  Insolence bothers me a lot because that

7     means that you're objecting to authority.  That shouldn't be

8     when you're in the prison system.  But I think you're on your

9     way to rehabilitation.

10                    But then again, I think of Ms. Minor and her

11    testimony.  And it's just kind of hard to believe that you're

12    one person that people support and love and say that they

13    will continue to support and love you when you get out;

14    versus the guy that was with Ms. Minor and allegedly her

15    friend and pretty much violated her trust in every way.  You

16    hurt her.  You hurt her physically, but there's something

17    about home invasions and being hurt by someone that you care

18    about or that you thought was your friend.  It's my position

19    and it's been my position a long time that people can, you

20    know, their bruises can heal.  But what's in their thoughts,

21    in their emotions are there forever.  And that's what

22    disturbs me the most.

23                    I think Ms. Minor testified she did not seem like

24    she was out to get you in any way in her presentation.  She

25    appeared to testify to facts.  She didn't embellish, it did

1   not seem.  But she told the jury what happened that day and

2   the jury convicted you.

3           So again, I want you to know, Mr. Fischer, I do

4   care.  I do want you to succeed.  I want you to be a better

5   person when you come out.  I feel sorry for your family.

6   They didn't do anything and they got a sentence that's like

7   yours.  So many times, uh, people go to prison and it's just,

8   again, very difficult for everybody.

9           I am recognizing rehabilitation and punishment.  I

10  am going to sentence you to 11 years to 30.  I will give you

11  credit for 1,246 days, which is substantial.  I'm sure that

12  the parole board will recognize the things that you have done

13  in prison.  And hopefully, while you're on parole, you're

14  going to do everything they say and more.

15          It was very smart of you to take care of all of

16  these pending charges.  That was smart because you probably

17  got credit for the time that you're serving.  And those are

18  off the table now.  You don't need to be concerned about

19  them.  And as you said, you might even get your drivers

20  license back, which I know is very important to everyone who

21  doesn't have mass transportation, which we don't have a lot

22  of in the State of Michigan.

23          But I will sentence you, uh, to that.  I did not

24  give you the maximum under the guidelines.  I think, and this

25  is kind of going back, after I heard the jury trial, I think

34

1   I would have given you the max under the guidelines.  I think

2   your attorney has kind of told me a number of things that I

3   see a different person.  I'm just hoping that you have been

4   rehabilitated and you're going to come out a better person.

5          But so keep doing what you're doing because I think

6   everything will help you when you are paroled.  Do you

7   understand your sentence, sir?

8          MR. FISCHER:  Yes.

9          THE COURT:  If you're dissatisfied with the

10  sentence, you may file an application for leave to appeal.

11  If you wish to do so, you must do so within 42 days.  If you

12  don't have the money to hire a lawyer, one will be appointed

13  for you and paid at county expense to do so.  Do you

14  understand that?

15         MR. FISCHER:  Yes.

16         THE COURT:  Okay.  We're gonna give you a document

17  to sign saying that you understand your appellate rights.

18  I'm going to wish you good luck.  I thank and I'm sure you

19  thank the people that have come here on your behalf.  I think

20  the letters did make a difference.

21         MS. HENRY:  Judge, if I may?

22         THE COURT:  Hmm-mm.

23         MS. HENRY:  On count one under the home invasion,

24  there is a paragraph one for restitution that was previously

25  ordered.  I would ask the Court to order $1,795 in

1    restitution.

2           THE COURT: Yes, I did miss those things.  Thank

3    you.

4           MS. HENRY: I would also ask the Court to sentence

5    on count three and count four, even though he has served the

6    maximum terms.

7           THE COURT: Yes.

8           MS. HENRY: I believe that can be reflected in the

9    sentencing, as well as the court fees and costs, as well.

10          THE COURT: Thank you.

11          MS. MARCUZ: Your Honor, with respect to

12   restitution, uh, at the last re-sentencing, there was a

13   request for an invoice.  Trial counsel asked for an invoice.

14   At that time, the prosecutor said yes, I will get that to you

15   within 30 days.  I don't believe that ever happened.  I, I

16   haven't seen it.  And if the prosecution does have that, that

17   would be, that would be very nice.  Mr. Fischer, uh, wants to

18   pay restitution.  We would just like where are these numbers

19   from.

20          THE COURT: And I understand that.  And I'm sure

21   they will comply.

22          I will indicate that you must pay restitution in

23   the amount of $1,795.  You must comply with DNA testing and

24   pay a $60 fee.  That says paid in full.  You must pay $68

25   state costs.  It also indicates that's paid in full.  You

1  must pay $130 crime victim assessment – that's been paid in

2  full.  You must pay court costs in the amount of $550.

3  That's been paid in full.  I do find the $550 is reasonable

4  based upon the statistics done by this court for purposes of

5  SCAO.  And they have been, it's my understanding, approved by

6  SCAO.

7         In count three, I will sentence you to the 365 days

8  in custody with credit for 365 days served.  You must pay $68

9  state costs.  And that's been paid in full.

10        And count four, the assault, aggravated assault, it

11  is the sentence of the Court that you be sentenced to 365 in

12  the, in, it would be in prison or jail with credit for 365

13  served.  You must pay $50 state costs.  It's my understanding

14  that you have paid everything but the restitution.  Is that

15  correct, counsel?

16        MS. MARCUZ:  That is correct, your Honor.

17  Restitution wasn't assessed at the original sentencing

18  because there was, uh, the agreement that Mr. Fischer would

19  be provided with, with an invoice or information about where

20  that amount was coming from, which we still don't have.

21        THE COURT:  I'm sure the prosecutor will comply.

22        MS. MARCUZ:  Okay.

23        MS. HENRY:  I will work with defense counsel in

24  this matter and, uh, provide the necessary documentation.

25  And if restitution, any restitution amounts need to be

1    amended, I will certainly work with her prior to filing

2    anything with the courts as far as motions.

3            THE COURT:  Okay.

4            MS. MARCUZ:  Thank you.  That sounds good.

5            THE COURT:  Mr. Fischer, hopefully you understand

6    that the Court could have given you the same sentence,

7    although I usually sentence within guidelines as I did.  You

8    have been given a gift, I think, of four years.  Take

9    advantage of those and make sure that you understand where

10   you are, where you're going.  Keep your goals written down.

11   Remind yourself in a journal or something as to what brought

12   you here in the first place and you'll be a better citizen.

13   Good luck to you.  Okay?  Thank you.

14           MS. MARCUZ:  Thank you, your Honor.

15           (At 11:48 a.m., proceedings concluded)

16                   * * * * * * * * * *

17

18

19

20

21

22

23

24

25

1  STATE OF MICHIGAN          )
                              )
2  COUNTY OF LIVINGSTON       )

3      I certify that this transcript, consisting of 39 pages, is a

4  complete, true, and correct transcript, of the proceedings and

5  testimony taken in this case on February 15, 2022.

6

7
                                    _____
8                                   Kristi Cox, CER5451
                                    Certified Electronic Recorder
9                                   204 South Highlander Way
                                    Howell, MI  48843
10                                  (517) 540-7532

   Dated:   April 20, 2022.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25